[Civil No. 1011.    Filed March 27, 1908.]

[94 Pac. 1116.]

WILLIAM J. MALLORY et al., Plaintiffs and Appellants, v. GLOBE-BOSTON COPPER MINING COMPANY et al., Defendants and Appellees.

1. CONTRACTS — CONSTRUCTION — TWO INSTRUMENTS CONSTRUED TO-GETHER.—Where an agreement for the sale of mining claims provides that in consideration thereof the purchaser should execute notes secured by mortgage on the claims and deliver shares of its stock, and subsequently the agreement was amended by further stipulation that a cash payment was accepted, and the notes and mortgage taken and the deed executed on the understanding that the purchaser should furnish one of the sellers continuous employment at the mines, and to furnish certain specified work, the agreement and amendment thereof must be read as constituting an entire contract, and the amendment was not invalid for lack of consideration because the consideration for the sale was the notes, mortgage and stock for which the owners were obligated by the original agreement to convey the claims, on the principle that the doing of an act which the promisee has already bound himself to perform is not a valid consideration.

2. SAME—RESCISSION—CONDITION PRECEDENT—RESTORATION OF CONSID-ERATION.—Where the consideration for the sale of mining property was a cash payment of certain notes secured by mortgage and the delivery of certain shares of stock by the purchasing company, an action for the rescission of the sale must fail where plaintiff tendered only the notes, mortgage and stock without cash payment or interest paid on the notes.

3. PLEADING—CONCLUSIONS.—Where one of the conditions of a sale of a mining claim was that the purchaser should prosecute the work of developing and mining as diligently and to such an extent as would be consistent with good mining and within its resources, an allegation of a breach in that the purchaser had not prosecuted the

working and development of the claims within its means and re-
sources is merely the statement of a conclusion, and shows no fact
constituting a breach.

4. SPECIFIC PERFORMANCE—ADEQUATE REMEDY AT LAW—DAMAGES.—
There can be no action for specific performance of a provision in
a sale of mining claims that the purchaser should furnish employ-
ment for the seller at the mines, there being a clear remedy at law
in damages for its breach.

5. SAME—SAME.—There can be no specific performance of provisions in
a sale of mining claims relating to the running of cross-cuts, shafts
and drifts, where the contract specified no time when the work
should be done, and there is no allegation of damages by failure
to commence the work at the time of the institution of the suit,
and there is no prayer in the complaint asking for such specific
performance as there is in respect to other provisions in the con-
tract of sale.

6. MINES AND MINING — CONTRACT — CONSTRUCTION.—Where a contract
of sale of mining claims was not made directly with the purchaser,
but with a third party as trustee, said sale not to be operative until
ratified by the purchaser or such other company as might be formed
thereafter for the purpose of working the mines, and it was pro-
vided that in the event of a new company being formed, the ven-
dors were to receive shares in the new company in the proportion
that under the contract they were to receive shares in the purchaser,
the clause, "a company to be formed for the purpose of working
the mines," referred to such company as should be formed to take
over the control in lieu of the purchaser if one should be so formed;
and the purchaser having satisfied the contract rendered the clause
inoperative, so that the owners could not, by virtue thereof, claim an
exchange of stock received by them in a purchase of the stock in
the company which thereafter acquired the claim.

7. SPECIFIC PERFORMANCE—FORFEITURE—OTHER REMEDIES.—Where a
contract for the sale of mining claims provides that on noncompli-
ance of the purchaser with any of the terms of the agreement it
should forfeit all machinery and appliances placed on the claims,
and provides that such forfeitures should be in full satisfaction of
all claims and demands, the agreement controls itself; it provides for
the measure of damages to the exclusion of the remedy by cancella-
tion of the sale and specific performance.

8. PLEADING—CROSS-BILL.—A cross-bill is proper whenever a defendant
has equities arising out of the subject matter of the original suit
which entitle him to affirmative relief which he cannot obtain in
that suit.

9. SAME—SAME.—In an action for cancellation of instruments, a cross-
bill to quiet title in defendant's grantor was germane in a suit to
set aside a conveyance of mining claims to defendant's grantor.

APPEAL from a judgment of the District Court of the Fifth Judicial District, in and for the County of Gila. Frederick S. Nave, Judge. Affirmed.

A. C. Baker, for Appellants.

Where one of the parties to an alleged contract has executed the same under a mistake as to a material fact, the fact that full performance has been had of what purported to be the obligations of the parties will not prevent a court of equity from decreeing rescission, there being, under such circumstances no meeting of the minds, and hence no real contract. *Crowe* v. *Lewin,* 95 N. Y. 423.

The appellee contends that there was no consideration for the supplemental agreement of May 27, 1905. It has been held that a valuable consideration, in the sense of the law, may consist either in some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other. 3 Am. & Eng. Ency. of Law, 1st ed., 831. The question of restitution does not apply in the matter of specific performance; and the appellants only reasonably ask that they have equitable relief one way or the other. They but demand that the contracts and agreements be complied with, or that their property be returned to them. In their amended complaint they have complied with the requirements of good pleading; they have set up the contracts in full, and averred the performance in fact on their part, and that the defendants have failed and refused to perform on their part. 6 Am. & Eng. Ency. of Law, 1st ed., 765.

Seth E. Hazzard, and Geo. J. Stoneman, for Appellees.

The doing of an act which the promisee has already by contract bound himself to perform is not a valid consideration for a promise, either to pay additional compensation or to give security, or to do any other thing which the other party to the contract may be coerced into making to secure its performance. 6 Ency. of Law, 2d ed., 752. The supplemental contract of May 27, 1905, was therefore without consideration and void. It cannot be questioned that every time the plaintiffs accepted a quarterly payment of interest on the mortgages, they thereby ratified the contract and their deed of the property as against every cause of action which they then had and of which they were aware; and that they thereby

waived every ground for cancellation of the deed which had at that time come to their notice. See 29 Am. & Eng. Ency. of Law, 2d ed., 1103; 24 Am. & Eng. Ency. of Law, 2d ed., 625; *Grymes* v. *Sanders,* 93 U. S. 55, 23 L. Ed. 798; 29 Am. & Eng. Ency. of Law, 677, where it is said: "The vendor's right [to a rescission] is waived where he . . . receives payments under the contract." "It is generally held that the complaint in a suit for rescission must restore, or offer to restore, all benefits or things of value he has received under the contract, to the end that the parties may be placed in *statu quo;* this being required upon the principle that 'he who seeks equity must do equity.' " 24 Am. & Eng. Ency. of Law, 621; *Kelly* v. *Owens,* 120 Cal. 502, 47 Pac. 369, 52 Pac. 797. "A bill for rescission cannot ordinarily be maintained where the ground for relief is merely a breach of contract, for which the complainant can obtain adequate compensation at law." 24 Am. & Eng. Ency. of Law, 2d ed., 619; *DeKay* v. *Bliss,* 120 N. Y. 91, 24 N. E. 300.


KENT, C. J.—In this case the trial court sustained the general and special demurrers of the defendants to the complaint, and entered judgment dismissing the complaint, and rendered judgment in favor of the defendant the Globe-Boston Copper Mining Company against the plaintiffs on such defendant's cross-complaint. This appeal brings up for review the question of the correctness of such action of the trial court.

The special demurrers sustained by the court were on the ground of the laches of the plaintiffs in bringing the suit. In the view we take of the action of the trial court with respect to the general demurrer interposed, we do not deem it necessary to pass upon the correctness of the trial court's action with respect to the special demurrers. The complaint alleges that the plaintiffs in 1901 were the owners of certain mining claims in this territory; that in May of that year they entered into a bond and lease of such claims with the defendant the Globe-Boston Copper Mining Company (which we will hereafter designate as the "Boston Company"); that on the 27th of February, 1905, the Boston company having failed to carry out the provisions of the bond and lease, the plaintiffs and the Boston company entered into an agreement in writing for the sale of the mining claims. The agreement (which is set forth in full in the complaint) was executed by the plaintiffs and one Magly as trustee for the

Boston company, and recited that the bond and lease thereto-
fore entered into between the parties was about to expire, and
the parties were mutually desirous of entering into a new and
separate agreement covering the sale and disposition of the
mining claims, and provided that the plaintiffs should sell
to the Boston company the mining claims, the consideration
for the purchase being the execution by the company to the
plaintiffs of the notes of the company for the sum of $30,000,
payable in five years from date, secured by a mortgage on the
mining claims and 75,000 shares of stock of the company;
that the company was to have a year from date to commence
active development and mining on the claims, and thereafter
should prosecute work on the claims "as diligently and to
such an extent as shall be consistent with good mining and
within the resources" of the company; that the company after
the expiration of a year from date should take steps to secure
patents to the claims, and should during the continuance of
the agreement perform the necessary annual labor to hold the
claims.    The agreement further provided that it should re-
main in force and effect for ninety days, for the purpose of
its being accepted and ratified by the Boston company,
through its board of directors, "or such company as may be
hereafter formed for such purpose"; that upon the accept-
ance and ratification of the agreement by the Boston com-
pany, or such other company to be formed for the purpose
of working the claims, the plaintiffs were immediately to ex-
ecute and deliver their deed to the property for the considera-
tion specified.    The agreement further provided that, in the
event of the noncompliance of the company with any of the
terms of the agreement, it should forfeit all machinery and
appliances which might have been placed upon any of the
claims, and that "said forfeitures shall be, and hereby is
made, the penalty, and shall be in full liquidation of all claims
and demands which now, or under any subsequent dealings
between the parties hereto, arise or be enforced on account
of any note or things to be done or performed by" the com-
pany.    The agreement further provided as follows: "In event
a new company shall be formed to operate said mining claims,
or the capital stock of said Globe-Boston Copper Mining Com-
pany shall be increased or diminished, the parties of the first
part, according to their respective interests, shall be entitled
to shares in said new company or in such capital stock in the
proportion that 75,000 shares bears to two million shares."

The complaint then sets up that this agreement of sale was executed by the parties thereto (the plaintiffs and Magly as trustee), and that afterward, on the 27th of May, 1905, such agreement was by a further agreement in writing between the plaintiffs and the Boston company, through its agent, Stoneman, modified and amended in part by providing "that as an inducement and additional stipulation to be added to the terms of" the agreement of February 27th a payment of $1,375 in cash "is accepted . . . and the notes and mortgages given by said company according to said agreement are taken by them (the plaintiffs), and the deed to the mining claims mentioned in said agreement is executed by said William Mallory and Nellie Mallory upon the understanding that the said company shall perform the following conditions": First, that the company should furnish William Mallory continuous employment at the mines at the rate of $3.50 a day, commencing from the first day of June, 1905, and terminating whenever said contract should terminate, provided Mallory was able to perform the labor; second, that a certain cross-cut, known as the "Crancer cross-cut," should be continued within the legal boundaries of the claims until lime was reached; third, that a cross-cut should be run from the main shaft to cut the first ledge south; fourth, to drift southeast with the sulphid streak in the Crancer cross-cut. The complaint alleges that these two agreements were intended to continue and be in force for five years from May 27, 1905, and until final payment should be made on the notes and mortgages; that in consideration of the covenants and agreements contained in these contracts, "or other verbal promises and agreements made" by the Boston company, the plaintiffs were induced to execute and deliver to the Boston company their deed to the property, and thereupon the company made and delivered its notes and mortgages and stock, as in the agreement provided, and the deed and mortgages were recorded; and that these agreements were executed before the execution and delivery of the deed, and the receipt of the plaintiffs of the consideration therefor. The complaint then alleges that the Boston company, its successors and assigns, have failed and refused to furnish the plaintiff William Mallory with work at the mines, have failed and refused to continue the Crancer cross-cut as agreed, have refused to run the cross-cut from the main shaft as agreed, and have refused to drift southeast with the sulphid streak as agreed.

The complaint then sets up certain verbal representations of the Boston company as to the value of the stock "known to the company to be false," on which the plaintiffs also relied as an inducement to deed their property; that the company knew the stock "was practically worthless, or be rendered practically worthless, by the fraudulent acts of said" company, and that the said company never intended to carry out or perform its said contracts and agreements, and that such acts and doings were in fraud of plaintiffs, and to cheat and defraud them out of their property, and that, by reason thereof, the consideration for the sale and transfer of the property has wholly failed, and the plaintiffs are entitled to a cancellation of the deed and a return of the property; that the company has wholly failed to do and perform the terms and conditions mentioned in the agreements according to the terms thereof, except that it paid the interest due on the notes and mortgage to July, 1906, and has made a part performance of the annual assessment work, and a partial securing of United States patents to some of the mining claims. The complaint further alleges that on December 6, 1905, the Boston company entered into a contract of sale with one Smith "for a large consideration named" to sell the mines to Smith, which contract provided that Smith should pay and discharge every liability owing by the Boston company, including the contracts with the plaintiffs; that thereafter Smith sold and assigned his contract with the Boston company to one Hovland "for a consideration mentioned in his said assignment," and on the 10th of April, 1906, "without the knowledge or consent of plaintiffs as stockholders or interested parties in said property," the Boston company entered into an agreement with Hovland for the sale of the property for $150,000, payments to be made in 1906 and 1907; and that Hovland accepted the conditions and obligations of the agreement of the company with Smith as binding upon Hovland. The complaint further alleges that "the plaintiffs believe" that thereafter Hovland, for a consideration of $150,000, sold and assigned his contract and agreement of sale to the other defendant in this case, the Globe Consolidated Copper Mining Company (hereinafter referred to as the "Consolidated company"), on the condition that the Consolidated company should carry out and fulfill all of the agreements to be performed by Hovland; that the plaintiffs "have reason to believe, and do believe," that the Consolidated com-

pany accepted and received the assignment of the contract from Hovland with the full knowledge of the terms and conditions of the contracts and agreements made between Smith and the Boston company, and Hovland and the Boston company, and agreed to all the terms and conditions therein contained to be performed, but that the Consolidated company has failed and refused, and still fails and refuses, to perform the terms and conditions in said contracts and agreements contained, or to recognize the rights of the plaintiffs in the contracts made between the plaintiffs and the Boston company, or either of them, and has refused to deliver to the plaintiffs an equivalent of stock in the Consolidated company in lieu of the 75,000 shares of stock held by the plaintiffs in the Boston company, in accordance with the agreements, although demanded so to do.

The complaint further alleges that the plaintiffs "are credibly informed, and have reason to believe, and do believe," that, in addition to the consideration to be paid by the Consolidated company to the Boston company of $150,000, the Consolidated company has assumed to pay to the plaintiffs the notes and mortgages, with the interest thereon, and all expenses of development, machinery, annual assessment work, expenses of patenting claims, "and whatever else was contracted and agreed to be done by the Globe-Boston Copper Mining Company"; that the Boston company has contracted to sell and dispose of all of its mining property, and by so doing threatens to close out all outstanding stock in the company and render the same worthless, and thus cheat and defraud these plaintiffs and other stockholders; that the Consolidated company has received a large amount of money from the sale of stock in said company, and from Smith and Hovland, and from the Boston company, which it fails to make known to its stockholders, with intent to cheat and defraud the plaintiffs and other stockholders out of their just and rightful interest in said stock or in said money. The complaint further alleges that the Boston company, its successors and assigns, have not complied with the terms and conditions of the contracts and agreements. "have not prosecuted the working and development of the said mining claims within their means and resources," and by such failure and neglect have materially lessened the security for the notes and mortgages held by the plaintiffs and rendered their stock practically worthless, and that by reason of the terms, and the

failure of the Boston company, its successors and assigns, to comply with the terms and conditions of the contracts, the same are, and ought to become, forfeited, and the deed made and delivered by the plaintiffs to the Boston company ought to be surrendered up to be canceled upon the plaintiffs' surrender to the Boston company of the notes and mortgages and the 75,000 shares of the stock, "and which these plaintiffs now bring into court and tender their surrender in open court," and, in case the court refuses to grant a judgment and decree for the cancellation of said deeds and the forfeiture of the contracts, then that the plaintiffs have judgment against the Boston company and the Consolidated company for a specific performance of their contracts, and that the plaintiffs be decreed to have awarded to them the equivalent of stock in the Consolidated company in lieu of the 75,000 shares held in the Boston company, and that the plaintiff William Mallory be allowed for the time while he should have been employed in the mines at the rate of $3.50 per day, commencing from the first day of June, 1905, "while he was physically able to perform said labor, to the present date."

The complaint closes with a prayer for judgment and a decree of the court for the cancellation of the deed upon the surrender of the notes, mortgages, and stock, or for a judgment and decree "of specific performance of said contracts and agreements as last aforesaid" against the defendants. The action was commenced November 10, 1906.

It is contended by the appellees that by the terms of the agreement of sale between the parties of February 27, 1905, the consideration for the sale of the mining property was the notes, mortgage, and stock, and, inasmuch as the plaintiffs were obligated by the terms of that agreement to deliver their deed to the property upon the ratification of the agreement by the Boston company, that the subsequent agreement of May 27, 1905, was without consideration, on the principle that the doing of an act which the promisee has already by contract bound himself to perform is not a valid consideration for a promise either to pay additional compensation or to give security or to do any other thing which the other party to the contract may be coerced into making to secure its performance. Under the allegations of the complaint, however, we think the two instruments must be read together as constituting one entire contract, and that the agreement of May 27th cannot be disposed of as invalid for want of considera-

tion. We do not think it necessary to discuss a number of reasons which we think must prevent the plaintiffs from succeeding in their claim that, upon the allegations of the complaint, they are entitled to a rescission of the contract and a cancellation of the deed. It is a sufficient answer to this contention that the plaintiffs have not offered restitution. Waiving the question of the sufficiency of the form of the tender, the plaintiffs have only tendered the notes and the stock. They have not offered, and do not offer, to restore the $1,375 paid them, nor the various amounts of interest paid them on the notes as such interest fell due. This failure on their part is sufficient in itself to preclude the awarding of such relief.

The next question presented is whether or not, upon the facts as stated in the complaint, the court should have decreed specific performance. To determine this, it is necessary to examine the terms of the conditions contained in the agreements in question. The agreement of February 27th required the company within one year from that date to commence active development and mining on the claims, and thereafter to prosecute such work as diligently and to such an extent as should be consistent with good mining, and within the resources of the company. The breach of this condition is alleged as follows: That the company, its successors and assigns, "have not prosecuted the working and development of the said mining claims within their means and resources." Assuming this to be an allegation that they have not prosecuted the work to the extent of their means and resources, it is, at best, a mere conclusion of the pleader, and shows no facts constituting a breach of the condition. The next condition is that the company shall, as soon as practicable after the expiration of one year from the date of the agreement, take steps to secure patents to all the claims, and prosecute such applications for patent to completion. The only breach of this condition alleged is "a failure to perform the conditions of the agreement, except a partial securing of United States patents to some of said mining claims." There is no time specified in the contract when the patents shall be secured, except that it should be done as soon as practicable after the expiration of one year. The complaint not only fails to allege any facts showing a breach of the condition, but shows a performance in part at least. So, as to the requirement of the performance of annual labor, we find no

XI Ariz.—20

specific allegation in the complaint of any facts showing fail-
ure to perform the necessary annual labor upon any claim
or claims, but, on the contrary, the allegation is that there
has been "a part performance of the annual assessment
work." Turning to the agreement of May 27th, the first-
condition which it is claimed has not been fulfilled is that
relating to the employment to be furnished by the company
to Mallory at the mines at the rate of $3.50 per day, com-
mencing from June 1, 1905. It is clear that upon a breach
this condition cannot be enforced by an action for specific
performance. The plaintiff has a clear remedy at law in dam-
ages for its breach. The other three conditions of the agree-
ment of May 27th relate to running cross-cuts, shafts, and
drifts. The breach alleged is that the work has not been
done; but it is to be observed that there is no time specified
in the agreement when the work should be done. There is
no allegation in the complaint that the plaintiffs have been
damaged by the failure of the company to commence the work
at the time of the institution of the suit, nor is specific per-
formance directly asked for in the complaint with respect to
these conditions, as it is specifically asked with respect to the
employment of Mallory at the mines, and to the exchange of
stock in the Consolidated company.

Upon the question of specific performance, the matter of
greatest moment to the plaintiffs, as we judge from the briefs
of appellants, is the question of the delivery to the plaintiffs
of the stock of the Consolidated company in exchange for the
75,000 shares of stock in the Boston company received by the
plaintiffs under the agreement of February 27th. The theory
of the plaintiffs with respect to their right to demand this
stock in exchange is that the Consolidated company is the
company referred to in the agreement of February 27th as
the new company to be formed to operate the mining claims
referred to therein. There is, however, no allegation in the
complaint that the Consolidated company was a company
formed for this purpose, or that it was such a company as
is referred to in the agreement of February 27th, except as
such contention may be inferred. A reading of the agree-
ment of February 27th leads us to the conclusion that the
Consolidated company, under the facts as they appear in the
complaint, does not come within the provisions of the agree-
ment of February 27th, so as to entitle the plaintiffs to an
exchange of stock in that company by reason of that agree-

ment. This agreement was entered into, not directly with the Boston company, but with one Magly, acting as trustee for the company. The sale provided in the agreement was not to be operative until the agreement should be ratified by the company. For this purpose it was provided that the agreement should remain in force for a period of ninety days from its date to enable the Boston company to ratify it. It is apparent from a reading of the agreement that it was in contemplation of the parties that the agreement might not be accepted by the Boston company, but it might be accepted by a new company to be formed for that purpose. Hence we find that, wherever reference is made in the agreement to the acceptance thereof by the Boston company, added thereto, are these words: "Or such other company as may be formed for the purpose of working said mines." The clause under which the plaintiffs claim they should have this stock transferred is as follows: "It is further understood and agreed that in the event a new company shall be formed to operate said mining claims, or the capital stock of the said Globe-Boston Copper Mining Company shall be increased or diminished, the parties of the first part, according to their respective interests, shall be entitled to shares in said new company, or in such capital stock, in the proportion that 75,000 shares bears to two million shares." This clearly has reference to such company as should be formed to take over the contract in lieu of the Boston company, in case one should be so formed, and was inserted in order that the extent of the plaintiffs' holdings in said company might be definitely fixed. The Boston company having ratified and accepted the agreement, this clause, and the other clauses relating to "a company to be formed for the purpose of working the mines," became inoperative and of no effect; the plaintiffs having received the stock in the Boston company, and not in such new company. The plaintiffs cannot, therefore, by virtue of this agreement, claim an exchange of the stock in the Consolidated company, which acquired the properties long after by virtue of the various contracts of sale set up in the complaint. Whatever rights the plaintiffs may have to stock or other interest in the Consolidated company or to the proceeds from the sale to such company, they acquire by virtue of their status as stockholders in the Boston company, and such rights must be enforced in proper proceedings to preserve the rights common to such stockholders. The fraudulent action of the officers and direc-

tors of the Boston company, as alleged in the complaint, with respect to the sale of the company's properties, is not within the issues in this suit.

Furthermore, we think by the terms of the contract the parties themselves have provided for the measure of the damages for a breach of the conditions thereof, and the means of satisfying such damages; and the plaintiffs are bound thereby, to the exclusion of the remedy sought in this suit. The seventh paragraph of the agreement provides that, in the event of the noncompliance of the company with any of the terms of the agreement, it shall forfeit all machinery and appliances which may have been placed upon any of the said mining claims, and such forfeiture is made the penalty, and is provided to be in full liquidation of all claims and demands "which now or under any subsequent dealings between the parties hereto arise or be enforced on account of any note or things to be done or performed by" the company.

The court overruled the demurrer of the plaintiff to the cross-complaint of the Boston company, and awarded judgment against the plaintiffs on the cross-complaint and the plaintiffs' answer thereto; and this is assigned as error. The cross-complaint was one to quiet the title of the Boston company to the property in question. To this cross-complaint plaintiffs filed their answer, demurring to the cross-complaint on the ground that such an action was not a proper subject for a cross-complaint, as not germane to the original cause of action. The plaintiffs further answered, denying any interest in the mining claims, except as alleged in their original complaint. The objection to the cross-bill is not well founded. A cross-bill is proper whenever a defendant has equities arising out of the subject matter of the original suit which entitle him to affirmative relief which he cannot obtain in that suit. In the case before us there was an absolute conveyance by the plaintiffs to the Boston company of the property in question. This the plaintiffs sought to have set aside. The question involved the title to the property, and it was a proper case in which to have such title determined. The court having determined adversely to the plaintiffs' contention, and the plaintiffs by their answer to the cross-complaint setting up no title except that claimed in their original complaint, the answer contained no effective denial of the claim of ownership set up by the Boston company. It was therefore proper for the trial court to enter judgment on the pleadings quieting the

title to the property in the Boston company as against the plaintiffs.

We find no error in the record; and the judgment of the district court is affirmed.

SLOAN and CAMPBELL, JJ., concur.