[Civil No. 3994.  Filed June 21, 1938.]

[80 Pac. (2d) 449.]

WILLIAM E. WHALLEY, Appellant, v. I. M. GEORGE and ANNA T. GEORGE, Husband and Wife, Appellees.

Mr. George M. Hill, for Appellant.

Mr. Carl G. Krook, for Appellees.

LOCKWOOD, J.—William E. Whalley, hereinafter called plaintiff, brought suit in the superior court of Mohave county for a restraining order and injunction prohibiting I. M. George and Anna T. George, his wife, hereinafter called defendants, from in any way interfering with his possession, use and occupancy of certain mining claims situated in Mohave county. The court denied the application for an interlocutory restraining order, and the case was then presented on the demurrer of the defendants. This demurrer was sustained, and plaintiff having elected to stand upon his complaint, judgment dismissing the action was entered on January 15, 1938, whereupon this appeal was taken.

The question is whether the complaint stated a cause of action. It is very lengthy, and we, therefore, summarize it as follows: It alleges in substance that on the 26th day of July, 1933, defendants, who were the owners of three patents and two unpatented mining claims and a certain water right in Mohave county, entered into a contract regarding said claims with one C. F. Weeks. This contract read, so far as material to the issues of this case, as follows:

"For good and valuable consideration, the receipt whereof is hereby acknowledged, I. M. George and Anna T. George, husband and wife, of Kingman, Mohave County, Arizona, parties of the first part, hereby grant to C. F. Weeks, of the City and County of Los Angeles, State of California, party of the second part, the exclusive right and option to purchase and operate the lode mining claims and water right hereinafter described, upon the following terms and conditions: (describing claims).

"2. Purchase Price. $52,500.00 payable at Kingman, Arizona, at the times and in the installments following:

    $ 5,000.00 on or before Sept. 26, 1934;
     10,000.00 on or before Sept. 26, 1935;

10,000.00 on or before Sept. 26, 1936;
10,000.00 on or before Sept. 26, 1937;
10,000.00 on or before Sept. 26, 1938;
7,500.00 on or before Sept. 26, 1939.

"3. Possession — Sampling — Operation. Second party is granted the immediate possession of said premises and the right to explore, sample, operate and work the same and extract the ores therefrom in the manner following: . . .

"4. Royalty. (a) Parties of the first part reserve, and party of the second part shall pay, a royalty on all ores (except said sampling and test ores) extracted from said property by second party and shipped, milled or otherwise disposed of during the life of this option, according to the following schedule: . . .

"(d) All royalties shall apply on the purchase price and be credited on the installments in the order of their due dates.

"5. Escrow Deed. On the payment of the first installment, that is, the installment due on or before September 26, 1934, or at such time prior thereto as may be mutually agreed upon, parties of the first part shall execute and cause to be placed in escrow, in such bank or trust company or other escrow holder as may be agreed upon, a good and sufficient mining deed, conveying said mining property and water claim to said party of the second part, or to such party as he may designate, together with instructions governing the delivery thereof according to the terms and conditions herein contained.

. . . . . . . . . .

"13. This Contract, Nature and Extent. This is an option coupled with right to operate and is not a sale, and time is of the essence hereof, and all the terms and conditions herein contained extend to and are binding upon the heirs and assigns of the respective parties hereto.

"14. Default. If second party makes default in any of said payments of purchase price, at the time and in the amount herein provided, or in any of the terms and conditions herein contained, then this option contract shall terminate upon thirty (30) days' notice from first parties to second party of their in-

tention to declare this contract at an end, and if second party fails within said thirty (30) days to make the payment with respect to which said second party has defaulted, or correct and make good any other violations of the terms and conditions of this agreement, on account of which such notice of default has been given, then and thereupon this option contract shall become, and thereby be, null and void and of no further force and effect and all payments theretofore made thereon shall be retained by first parties as liquidated damages for the use and occupancy of said premises, and as the consideration for which this agreement is executed, and second party shall forthwith deliver to first parties the peaceable possession of said premises, and said escrow deed, if any shall have been placed in escrow, shall thereupon become null and void and be returned by the escrow holder to said first parties, or their order.''

Weeks entered into the possession of the premises, under the terms of the contract, and began working them. On January 2, 1934, he assigned to plaintiff a one-half interest of his rights in said contract, and notified defendants of such assignment. Weeks and plaintiff continued to work the claims, and on October 19, 1934, paid to defendants the sum of $5,000.00 as the first installment provided for in the contract as the purchase price, and on the same date, the defendants, Weeks and plaintiff signed and delivered to the Valley Bank & Trust Co. of Kingman, Arizona, the following escrow instructions:

''We are handing you herewith mining deed executed by I. M. George and Anna T. George, husband and wife of Kingman, Mohave County, Arizona, and conveying five mining claims and a water claim, commonly known as the Tyro Group, situate in the San Francisco Mining District, Mohave County, Arizona, to William E. Whalley and C. F. Weeks, of Kingman, Mohave County, Arizona.

''You are hereby directed to hold the enclosed deed in escrow, subject to the following instructions, to-wit:

"In the event the said William E. Whalley and C. F. Weeks shall pay to the bank, for the credit of I. M. George, the sum of $47,500.00 at the times and in the installments following, to-wit:

$10,000.00 on or before September 26, 1935
10,000.00 on or before September 26, 1936
10,000.00 on or before September 26, 1937
10,000.00 on or before September 26, 1938
7,500.00 on or before September 26, 1939

you are directed and authorized to deliver the enclosed deed to William E. Whalley and C. F. Weeks, or their order,"

together with a deed executed by defendants in favor of plaintiff and Weeks conveying to the latter the premises covered by the contract.

Thereafter, and up to October 30, 1937, the plaintiff and Weeks paid to defendants on the contract the total sum of $26,260, which is in excess of fifty per cent. of the total purchase price set forth. On September 26, 1937, defendants notified plaintiff and Weeks that they elected to declare the contract void for the reason that the latter had not kept up the payments as required by the contract, but the latter continued to operate the claims until November 1, 1937, at which time the attorney for defendants notified the milling corporation, which had been milling the ores extracted from the claims, not to receive nor accept any more ores from said claims as operated by Weeks and plaintiff. This particular company is the only one which can economically mill the ores produced by the claims in question, and as a result, plaintiff and Weeks were compelled to cease operation of the claims. Thereafter, Weeks assigned his interest in the contract to plaintiff, and this suit was brought.

It was alleged in the complaint that by virtue of the payment of the $26,260 aforesaid, which was more than one-half of the purchase price of the property,

plaintiff, who was in actual possession of the premises, was entitled to continue in such possession, with a right to use and enjoy them, for a period of nine months from the time he was notified that defendants intended to declare the contract at an end.

It is agreed by the parties that the real question for our determination is whether or not the provisions of section 2781, Revised Code of 1928, apply to a transaction of this kind. If they do, the injunction should have been issued. If they do not, the ruling of the court is correct. This section reads, so far as material, as follows:

"§ 2781. *Sales on contract; forfeiture; extending time.* A forfeiture of the interest of the purchaser in default under a contract for the conveyance of real property may be enforced only after the expiration, after such default, of the following periods: . . . where the purchaser has paid fifty per cent, or more, of the purchase price, nine months. The purchaser may avoid such forfeiture at any time prior to the expiration of such additional period by complying with the terms of the contract to the date of such compliance. . . . "

In the case of *Foster* v. *Bauman,* 34 Ariz. 274, 271 Pac. 30, we have stated:

"The evident intent of the law was to protect purchasers on the partial payment plan from harsh and inequitable forfeitures heretofore so prevalent, but we think such protection was intended for those purchasers who have parted with money, or its equivalent, to the immediate benefit or enrichment of the seller. . . . The benevolent intention of the law is to protect the purchaser, who under the partial payment plan often is unable to protect himself, and not to give him an undue and unreasonable advantage of the seller."

Counsel for defendants says the section only applies to "the interest of the purchaser . . . under contract for the conveyance of real property" and

that the instrument in question is not a contract for the conveyance of property, but merely a unilateral option of purchase, and therefore not within the terms of the contract, and that mining claims are not real property in any event.

Upon an examination of the provisions of the contract above set forth, it appears that it granted to Weeks an option to purchase the property on certain installment payments, the first of which was the sum of $5,000. It is contended by plaintiff that by the payment of this $5,000, the option, even if it was not originally a contract for a conveyance, was transferred into a specific agreement to convey, which was fully within the terms of the statute. We have had a very similar situation before us in the case of *United Farmers' City Market, Inc.,* v. *Donofrio,* 43 Ariz. 35, 29 Pac. (2d) 144. In that case the plaintiff and defendant entered into a lease of certain real estate, which also contained a provision as follows (pages 38, 39):

"(6) In consideration of the covenants and agreements herein contained on the part of the lessees herein to be by them kept and performed, the lessors hereby grant and give to lessees herein the right and option at any time within thirty (30) months from and after the date of the execution of these presents, to purchase the above described real property from lessors at and for the sum of fifty-seven thousand ($57,-000.00) dollars, that is to say, payment of seventeen thousand ($17,000.00) dollars on or before thirty (30) months from the date of the execution of this lease and option. . . ."

The first installment of $17,000 was paid by the lessees, and thereafter the question arose as to whether the instrument was a mere unilateral option or a contract of bargain and sale. After stating the rule that the exercise of an option changes the agreement into a contract of sale, binding upon both parties,

which completes the contract and exhausts the option, we said:

"We think the payment of the $17,000 was in legal effect a notification by defendant to plaintiffs that it intended to and had exercised its option, and by their acceptance thereof the option became a contract of purchase and sale binding upon both parties."

The facts in that case were precisely similar in their material features as those of the present case,—an instrument which granted an option to purchase certain property upon the payment of installments, and a payment by the purchaser of the first installment. We see no reason to depart from the rule laid down in the case just cited, and we hold that the payment of the $5,000 installment in this case changed the unilateral option into a contract of purchase and sale, binding upon both parties. That this was the understanding of the parties at the time is shown by the fact that then, and not until then, defendants placed a deed in escrow.

Defendants urge that the case of *United Farmers' City Market, Inc.,* v. *Donofrio, supra,* does not apply for the reason that in the contract in that case the agreement was binding upon both parties and an action for specific performance could have been maintained by either, while in the present case the parties stipulated that in case of default the contract should not be subject to specific performance, the only remedy of the seller being the retention of the money theretofore paid as liquidated damages. We have held in the cases of *Armstrong* v. *Irwin,* 26 Ariz. 1, 221 Pac. 222, 32 A. L. R. 609, and *Mallory* v. *Globe-Boston Copper M. Co.,* 11 Ariz. 296, 94 Pac. 1116, that the parties to a contract of purchase and sale might provide that in case of a breach by the vendee the only remedy should be the retention by the vendor of the purchase price already paid, and not specific per-

formance, but that this did not change the nature of the contract. This rule has also been laid down in *Wright* v. *Suydam*, 72 Wash. 587, 131 Pac. 239, and *Vance* v. *Roberts*, 96 Fla. 379, 118 So. 205.

But it is said, the statute only applies to "real property" and mining claims are not real property. We confess we are unable to follow the argument of defendants in this respect. So far as we are aware, all tangible property must fall into one of the two great classes of real and personal property, and if this be true, mining claims are real property in every sense of the term. Certainly the *corpus* of a claim is realty and its locator acquires full ownership thereof as against every person but the United States so long as he keeps his location good, and even as against it, upon compliance with the conditions laid down by law is entitled to a patent to the property. It is true that our statutes have in certain cases, such as taxation, exempted unpatented mining claims from classification for such purposes as real estate, but the very fact that the legislature considered it necessary to make the special exemption shows that, in the absence of such statute, mining claims are considered real estate. The same is true as to the statute in regard to the conveyance of unpatented mining claims by a husband without the consent of the wife. It is said that the contract expressly states it is not a contract of sale, but an option, but the nature of an instrument is determined by the effect the law gives to its terms, and not by the name by which the parties have designated it. Further, it would be against public policy to allow parties to defeat a statute in this manner. *Forbach* v. *Steinfeld*, 34 Ariz. 519, 273 Pac. 6.

Since the contract between the parties, whatever it may have been in the beginning, by the payment of the first installment on the purchase price became a contract of purchase and sale, which by its terms required

the conveyance of real property, we are of the opinion that section 2781, *supra,* was applicable, and as admittedly more than fifty per cent. of the purchase price thereof had been paid and the purchaser was in possession of the premises, he was entitled to retain such possession for a period of nine months after his default, with the right of avoiding forfeiture at any time during said nine months by complying with the terms of said contract to the date of said compliance.

The judgment of the superior court of Mohave county is reversed, and the case remanded with instructions to overrule the demurrer to the complaint, and for such further proceedings as may be in harmony with the opinion expressed herein.

McALISTER, C. J., and ROSS, J., concur.