ROANE-ANDERSON COMPANY

*v.*

JAMES CLARENCE EVANS, Commissioner, etc.

(*Nashville,* December Term, 1955.)

Opinion filed April 27, 1956.

Rehearing Denied June 8, 1956.

JACKSON C. KRAMER AND R. R. KRAMER, Knoxville, for Roane-Anderson Company.

H. BRIAN HOLLAND, Assistant Attorney General, ANDREW D. SHARPE, LYLE M. TURNER, Washington, D. C., Special Assistants to Attorney General, for the United States, appellant (intervenor).

WILLIAM MITCHELL, Washington, D. C., J. WALLACE OULD, JR., O. S. HIESTAND, JR. AND DAVID L. OAKLEY, JR., Oak Ridge, for U. S. Atomic Energy Commission.

ALFRED T. ADAMS, GEORGE P. ANDERSON, R. C. BOYCE, JR., J. VAULX CROCKETT, THOMAS H. EVANS AND T. JAMES STERRITT, Nashville, Special Counsel for defendant.

GEORGE F. McCANLESS, Attorney General, AND ALLISON B. HUMPHREYS, Solicitor General, of counsel, for appellee-defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This appeal involves the right of the complainant, Roane-Anderson Company, a Tennessee corporation, to recover certain privilege taxes which it paid under protest. The Commissioner of Finance and Taxation assessed these taxes against the complainant as a result of its activities pursuant to its contract with the Atomic Energy Commission.

In the original bill seeking a recovery of these taxes it is charged that complainant was acting as the agent of the United States Government; that the contract, under which it operated, designated the complainant as

such agent, and all of its activities have been as the authorized agent of the Federal Government, and for this reason the assessment was in violation of the Supremacy Clauses of the Federal Constitution, namely, Article I, sec. 8, Clause 18, and Article VI, Clause 2, of the instrument.

The United States Government filed an intervening petition, making the same contention. It was later stricken by the Chancellor on motion of the defendant. An exception was taken.

The defendant answered the bill and denied that the complainant was acting as agent of the United States Government, and insisted that it was an independent contractor and was subject to the State tax statutes, which rendered it liable for sales and use taxes, and gross receipts taxes.

These cases were brought by the complainant to collect the taxes paid, and "to test the liability of Roane-Anderson Company and as far as possible the liability of certain Government contractors on the Oak Ridge Area, for certain State privilege taxes for the period 1944 through 1946." To this end the bill seeks a declaratory judgment.

The Chancellor held, upon a review of the record, that the complainant was not an agent of the Government but was acting as an independent contractor; that it was exercising all of the privileges claimed by the State of Tennessee, and that the taxes paid under protest were legally exacted.

He further held and decreed that under the circumstances it would be inequitable and unjust for the complainant to be onerated with the burden of paying inter-

est and penalties and that the Commissioner should pay to the complainant the amount of penalties and interest which had been paid under protest.

Roane-Anderson appealed from the aforesaid holding of the Chancellor, and the Commissioner also appealed. Numerous errors have been assigned by Roane-Anderson. The principal error relates to the decree which finds and holds that the Roane-Anderson Company was acting as an independent contractor with the United States of America. A decision of this sharply disputed issue will be determinative of several other assignments, which will be later considered in this opinion.

Upon the question of agency as against the status of independent contractor we are challenged by the following contention:

"Second: The learned Chancellor erred in holding that all of the elements which were before him in this suit insofar as is necessary for a determination of the question of agency as against the status of independent contractor were before the Court in the Roane-Anderson Company Sales Tax Cases (*Roane-Anderson Co. v. Carson,* 192 Tenn. 150, 239 S.W.2d 27), and that the determination as made in those cases is controlling in the present suits."

We will refer hereafter to Roane-Anderson Co. v. Carson as the Carson Sales Tax case. The majority opinion by Mr. Justice Burnett gives a complete history of the vast development of the Oak Ridge Area by the Federal Government. It was sponsored by the Government for the sole purpose of making nuclear weapons as " 'potentially destructive beyond the wildest nightmares of the imagination; * * *. This weapon has been created not by the devilish inspiration of some warped genius but by

the arduous labor of thousands of normal men and women working for the safety of their country.' Smyth Report, Page 163, released in August, 1945." [192 Tenn. 150, 239 S.W.2d 29.]

It is pointed out in that opinion, 192 Tenn. at page 158, 239 S.W.2d at page 30, "The land and all facilities in the plant at Oak Ridge are wholly owned by the United States government." We might say in passing that this continues to be true now as it was then. It was strictly a Government operation.

Regarding the nature of the operation and the risk of invested capital, it is said:

"The contractors are not required to risk their own money in the operation of Commission facilities. This provision of the contract obviously came about by reason of the enormity of the project, the newness of what was being done and of the uncertainty of the result. It is said that 'regardless of what happened the government would pay the bill' and it was on this basis that the contracts were originally made with the various companies in the production of Atomic energy. All the contracts have a 'hold-harmless' provision and the expenses and procurements are on a reimbursable basis."

It was necessarily a secret operation in order that the enemy not be apprised of the development of a weapon so destructive that a great city could be wiped out by a single atomic bomb. This secrecy was fully justified.

The repeated declaration in the contract that Roane-Anderson is the agent of the United States Government, and that this status was accepted and acknowledged by Roane-Anderson was conclusive upon the par-

ties to this contract. But not so as to others and especially the State of Tennessee's right to levy and collect taxes from individuals and agencies who were exercising taxable privileges which were admittedly authorized by law.

In considering the relationship of the parties in the case now before us we must examine the contract in its entirety, the nature and use of the physical properties, as well as its ownership, and the activities of any and all persons engaged in operating the Oak Ridge project, and thus determine the intention of the parties.

The said contract was on the usual cost-plus basis of remuneration for services rendered. The contractual duties to be performed by Roane-Anderson were so varied and multitudinous that they could not be foreseen and specified in any written instrument. These activities were performed subject to Government approval. It conclusively appears that every duty performed by Roane-Anderson, its agents and servants, was in the use of Government property and Government facilities, all of which was to accomplish one single purpose, namely the production of an atomic bomb for use by the Armed Forces of the United States of America. But this is not sufficient in and of itself to justify us in holding that the collection of charges for the use of Government property, such as rental to employees of houses, to concessionaires, and other like operations, is exempt from State taxation, provided the tax so levied is not laid upon the property itself and does not interfere with or embarrass the Government in the unfettered use of its property.

The foregoing was in substance the basis of our holding in the Carson Sales Tax case, that Roane-Anderson was an independent contractor, but was exempt from the

tax by reason of Section 9(b) of the Act of Congress creating the Atomic Energy Commission. The Court rested its opinion largely upon *James v. Dravo Contracting Co.,* 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318, and *State of Alabama v. King & Boozer,* 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615. But for the exemption provided for in the Act of Congress, *supra,* the State tax as levied was lawful and did not encroach upon Federal authority.

Contention is made by counsel for Roane-Anderson that our decision in the Carson Sales Tax case is not *res judicata* as to the issue involved in the case at bar. It is insisted that the facts here are vastly different. It is true that in the instant case there appears testimony as to the exact use of Government property by Roane-Anderson and not brought out in the former case. Moreover the Court rested its decision on the authority of *State of Alabama v. King & Boozer, supra,* that the cost of material purchased by Roane-Anderson, and other contractors, to be used in furtherance of the Oak Ridge project was subject to our Sales Tax Statute. In the instant case the tax exacted is upon *Government owned* property and revenue derived from such property.

█ The doctrine of Collateral Estoppel cannot be applied in tax cases unless the identical taxes are involved in the second or later suit. *State v. Bank of Commerce,* 95 Tenn. 221, 31 S.W. 993; *Union & Planter's Bank v. City of Memphis,* 101 Tenn. 154, 46 S.W. 557. See also, *Willis v. Willis,* 48 Wyo. 403, 49 P.2d 670.

The facts developed in the case at bar give rise to the contention by Roane-Anderson that the tax levied and sought to be exacted constitutes an interference with Federal authority in the Oak Ridge Area, and is in effect

a tax upon Government property. This question is presented for the first time, both in the trial court and on this appeal. The contention is made that the tax here exacted is in violation of the Supremacy Clauses of the Federal Constitution. The counsel for Roane-Anderson, in support of this insistence, rely strongly upon *Mayo v. United States,* 1943, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504, and *Kern-Limerick, Inc. v. Scurlock,* 1954; 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546. Whether or not these cases are controlling in the case at bar depends in a large measure upon the activity of Roane-Anderson in the control, use and management of Government property.

It is insisted (1) that Roane-Anderson was not engaged in operating a Transportation Company, i. e., the operation of Government owned buses, and hence not subject to a tax on gross receipts; (2) that it is not engaged in the business of Furnishing and Distributing Water and/or Electric Current; (3) that the Motor Vehicle Act does not require Roane-Anderson to pay the Registration Fees on the truck; if it does, it is in violation of the Federal Constitution.

Other like contentions are made by Roane-Anderson with reference to the control and use of other properties of the Government from which revenue was collected.

It is not disputed that Roane-Anderson and its employees are operating a number of buses "on the Area" and "off the Area" for the benefit of numerous employees at Oak Ridge, many of whom live inside the Area and some outside of the Area. These vehicles are the property of the Federal Government.

Roane-Anderson has full control of a system of waterworks in which water is obtained from the Clinch River and supplied to every agency connected with the Oak

Ridge project. Most, if not all, of these agencies pay for their service to Roane-Anderson. The system is owned by the Government.

Roane-Anderson is in authority over the use and distribution of electric current throughout the Oak Ridge Area. But it is wholly Government property. Fees for this service are paid to the Roane-Anderson Company.

We deem it unnecessary to refer to other similar activities. The question posed for decision, do these assessments so levied and collected, amount to a subjection of Federal owned property to a State tax, such as, a license to operate a bus, truck, etc., a gross receipts tax, a tax upon seating capacity of buses, the same being so much upon every seat?

Now it will hardly be denied that the functions of the Federal Government would be greatly impaired, if not completely paralyzed, if these operations should cease. It is not conceivable that the Commissioner of Finance and Taxation, or any other State agency, could levy a distress warrant upon any Government property for the failure of Roane-Anderson to pay these taxes.

Turning now to the cases relied on by Roane-Anderson, in *Mayo v. United States, supra,* the State of Florida undertook to impose an inspection fee upon a shipment of fertilizer into the State, which was the property of the Federal Government. It was held (opinion by Mr. Justice Reed):

"These inspection fees are laid directly upon the United States. They are money exactions the payment of which, if they are enforceable, would be required before executing a function of government. Such a requirement is prohibited by the supremacy

clause. We are not dealing as in *Graves v. People of State of New York, supra* [306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927], with a tax upon the salary of an employee, or as in *State of Alabama v. King & Boozer,* 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615, with a tax upon the purchases of a supplier, or as in *Penn Dairies v. Milk Control Commission,* 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. [748], decided March 1, 1943, with price control exercised over a contractor with the United States. In these cases the exactions directly affected persons who were acting for themselves and not for the United States." [319 U.S. 441, 63 S.Ct. 1140.]

In *Kern-Limerick, Inc., v. Scurlock, supra,* the question decided was the legality of the Arkansas gross receipts tax of 1941 where it was exacted of private contractors engaged in a joint venture, and who had purchased two diesel tractors costing $17,146 for use in constructing an ammunition depot for the United States. The Court ruled that the "transaction would concededly make Kern-Limerick liable for the tax if the real purchaser were not the United States." [347 U.S. 110, 74 S.Ct. 405].

In this case the United States intervened, as in the case at bar, because under its contract it agreed to reimburse Kern-Limerick. The Court distinguished *James v. Dravo Contracting Co.* and *State of Alabama v. King & Boozer, supra,* from the case then under consideration. In pointing a distinction between the case and *State of Alabama v. King & Boozer,* the Court has this to say:

"A phase of the question reserved in the Dravo case came up in *State of Alabama v. King & Boozer,* 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 [140 A.L.R. 615]. We declared that federal sovereignty 'does not spell

immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity.' * * *

"The doctrine of sovereign immunity is so embedded in constitutional history and practice that this Court cannot subject the Government *or its official agencies* to state taxation without a clear congressional mandate. No instance of such submission is shown." (Emphasis supplied.)

■ Now for further consideration of contentions made by the defendants, a declaratory judgment having been sought in these cases as to the complainant's liability for base taxes during the period of January 1, 1944, through December, 1946, we hold that the receipts of revenue from Government owned property, such as buses ("seat" tax), trucks, and automobiles, owned and used for the transportation of employees on the Oak Ridge project, as well as collections from other agencies, cannot be made the basis for assessing and collecting gross receipts taxes by the Commissioner of Finance and Taxation.

■ The mere fact that the Congress repealed Section 9(b) of the Act creating the Atomic Energy Commission does not affect the title, ownership, and operation of Government property by the Roane-Anderson Company, and this is true whether Roane-Anderson was acting as an agent under its contract with the Atomic Energy Commission or as an independent contractor.

■ It cannot be denied that Roane-Anderson was engaged in the performance of a public duty mandatorily required by the Act of Congress. The fact that Roane-Anderson was a private corporation, and acting pursuant

to a valid contract with the authority, set up by Congress, does not give it the aspect of a private business. It was engaged in no commercial activity for profit. Its sole taxable income was the fee which the Government had contracted to pay it for its services. The property which had been purchased by Roane-Anderson, Carbide & Carbon Chemicals Corporation and other contractors (see Carson Sales Tax case) for completing the Oak Ridge project became vested in the United States Government. The revenue derived therefrom could not be made the base for collecting these taxes in violation of the Supremacy Clauses of the United States Constitution as held in the Federal decisions above recited. The cases of *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U. S. 579, 72 S.Ct. 863, 96 L.Ed. 1153, and *Powell v. United States Cartridge Co.,* 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017, relied on by the defendant have no application to the foregoing determinative issue. The Youngstown case involved a seizure of private property by the Government. Nor is there any question here involving conscription of industry under the control of the military.

It would unduly prolong this opinion to attempt to discuss other cases cited by defendant's counsel and distinguish them. Many of them relate to collateral issues.

We cannot escape the conclusion that revenue derived from the right to occupy and use Government property is as much Government owned as the property itself. If this be true, it is clearly not subject to the tax sought to be exacted in this present litigation. For this Court to entertain a different view would run counter to *McCulloch v. State of Maryland,* 4 Wheat. 316 4 L.Ed. 579.

■ We are therefore constrained to sustain complainant's assignments of error (1) that the Chancellor erred in dismissing the complainant's bills. We think they should have been sustained and a decree to this effect will be entered, allowing a recovery of the sums of money paid under protest with interest thereon as provided by law. (2) It was error to dismiss the intervening petition of the United States Government. A decree in this Court will be entered sustaining the bill.

Other assignments of error are pretermitted because they are foreclosed, and are fully disposed of in our discussion and disposition of the principal assignment.

We deem it unnecessary to make specific reference to the defendant's assignments of error and discuss them in detail. They have been considered and dealt with in connection with the complainant's assignments. Suffice it to say if Roane-Anderson Company is entitled to recover the sums of money paid under protest, it would include not only taxes illegally assessed, but *interest* and *penalties* as well.

Inasmuch as Roane-Anderson Company is, in our opinion, entitled to a decree in its favor, for reasons stated in this opinion, it is immaterial that the Federal Government was not allowed to intervene; nor is it material that the Chancellor declined to sustain the defendant's plea of *res judicata,* for the stated reason that the doctrine of Collateral Estoppel has no application to the case at bar.

The questions raised in the two cases are to all intents and purposes the same. Our disposition of the assignments will apply to both cases, and the foregoing opinion will be considered as authority in each case.

TOMLINSON and BURNETT. JUSTICES, concur.

SWEPSTON, JUSTICE, (dissenting).

I find myself unable to agree with the majority opinion in this case and I therefore respectfully dissent for the following reasons.

The two determinative questions involved in this case are (1), the contention of the Roane-Anderson Company that it was merely an agent of the United States Government in carrying out its contract with the Atomic Energy Commission and thus its principal, the United States, is entitled to immunity from the payment of the privilege taxes which were paid in this case under protest and for recovery of which this suit is brought, and (2) that it, a private corporation, being merely an agent of the Federal Government and not being an independent contractor, would not be liable for the payment of said privilege taxes.

The essence of the majority opinion as I understand it is that since Roane-Anderson Company was using Government property in carrying out its contract, the exaction of the privilege taxes involved herein was a tax on the Government property itself or on the revenues derived therefrom. Under the facts developed in this case I am not able to agree with such a view.

I need not discuss the question of whether or not the decision of this Court in *Roane-Anderson Co. v. Carson*, 192 Tenn. 150, 239 S.W.2d 27, called the Sales Tax Case, creates a collateral estoppel in the present case on the question of whether or not the complainant Roane Anderson is an independent contractor, or a simple agent. However I think it is clear that this record shows that complainant was an independent contractor. It was so

held in the above mentioned case in which this same contract was involved and was fully discussed in that opinion. The proof in the present case is simply an amplification of the same thing that was heretofore involved and I think it very clearly appears that complainant was an independent contractor.

In fact the insistence of complainant in both cases that it was a simple agent acting under the direction and control or the right of direction and control by the Government agency is indeed an obviously paradoxical insistence when it appeared in the former case as it does in the present case that the very reason that the complainant was employed by the Government agency was because the Government officers and officials did not have the so-called "know-how", that is the skill, ability, experience, and so on necessary to accomplish the objectives of the Atomic Energy Commission, but that the complainant did have the "know-how". It is certainly therefore very pertinent to inquire how or in what way the A.E.C. could undertake to exercise its right to direct the method and manner of performance of this contract, when admittedly it did not know how to do so.

In order to make clear some of what is to be hereinafter said, references made to the following matters pointed out in the brief of defendant:

"In his opinion, finding on the facts and the record that Roane-Anderson was not an agent or instrumentality of the United States, the Chancellor attached particular significance to the following matters pointed ed out by defendant:

"1. In connection with the operation of Roane-Anderson the United States did not occupy the position of principal because its only substantial obligation

was to reimburse complainant for expenditures under the contract and pay it a fixed fee (Tr. 62).

"2. The United States was not bound as to third persons on obligations made by Roane-Anderson, unless assumed directly, being bound only to reimburse Roane-Anderson for expenditures. (Tr. 62).

"3. The duty of employment, supervision and direction of its operations rested on Roane-Anderson since all persons employed by it were its employees exclusively, the contract providing, 'The duties and functions of all such persons will be performed under the sole supervision and direction of the contractor * * *' (Contract, Art. 1, Sec. 2) (Tr. 62).

"4. The Government was not obligated to finance the work of Roane-Anderson, nor to make advances to it; this burden was placed on the contractor and the contract provided that the contractor will not be reimbursed for interest on capital employed nor on borrowed money (Contract, Art. V, Sec. 3) (Tr. 62).

"5. Third persons dealing with Roane-Anderson could not look to the Government for payment, but only to Roane-Anderson and its parent company (Turner Construction Company) (Tr. 62).

"6. State laws covered the employment relations of Roane-Anderson's several thousand employees just like those of any ordinary cost-plus-fixed-fee contractor, the contract providing, 'The contractor shall act as Agent for the United States of America, it being understood and agreed, however, that all personnel and labor shall be and remain for all purposes the employees of the contractor, exclusively' (Art. I, Sec. 3) (Tr. 63).

"7. The contractor was required to transfer to the Government on termination all materials, supplies, facilities, equipment, machinery, etc., acquired by the contractor in the performance of the contract (Art. XV, Sec. 2(e)) (Tr. 63).

"8. On termination the Government was required to assume and become liable for those obligations, commitments, etc., of the contractor 'the cost of which would be reimbursable in accordance with the provisions of this contract' (Art. XI, Sec. 3) (Tr. 63).

"9. The contractor was required under the contract to account for equipment purchased only when the Government reimbursed the contractor for the price thereof (Art. V, Sec. 3) (Tr. 63)."

In carrying out its contract the complainant among other things did the following:

1. It operated a transportation system, using the buses and some other equipment furnished it by the Government. Such operation is made a privilege by Code Section 1248.134.

2. It operated passenger motor vehicles for hire which were furnished by the Government. This is made a privilege by Code Section 1152.5 and the tax is on the number of bus seats.

3. It engaged in the business of furnishing and distributing water and electric current to consumers at Oak Ridge. Such business is made a privilege by Code Section 1248.126.

4. It operated passenger motor vehicles of two types and freight motor vehicles upon highways, roads, streets, etc., of the State of Tennessee which privileges are covered by Code Section 1152.3 and 1152.4 and 1166.29.

The majority opinion says that it will hardly be denied that the functions of the Federal Government would be greatly impaired if not completely paralyzed if these operations should cease. With that none will disagree, but that statement is a far cry from saying that if the incidence of these privilege taxes falls directly upon the complainant and only incidentally on the Government, the necessary result would be that the operations would have to cease. All of the cases with which I am familiar especially those opinions of the Supreme Court of the United States cited in *Roane-Anderson Co. v. Carson, supra,* are to the effect that if the incidence of the tax is on the cost-plus-fixed-fee contractor and only incidentally increases the cost of the project to the Government, this does not serve as any basis for immunity of the contractor from payment of the tax, either sales tax or privilege tax.

The majority opinion contains the further statement that it is not conceivable that the Commissioner of Finance and Taxation or any other State agency could levy a distress warrant upon any Government property for the failure of Roane-Anderson Company to pay these taxes. No one will disagree with that statement, but there is not the slightest suggestion anywhere in this case that the State was laboring under any illusion that it could levy a distress warrant upon Government property.

The majority opinion relies upon *Mayo v. United States,* and *Kern-Limerick, Inc., v. Scurlock,* as authority for the proposition that the collection of these taxes will be a collection from the Federal Government. These cases in my opinion can be easily distinguished from the cases above referred to. In the Mayo case the State of

Florida undertook to collect an inspection fee from the United States by reason of its distribution of fertilizer under the soil building and conservation program. The State there undertook to advance the theory that the fertilizer really belonged to the manufacturers and that the Government was serving only as a conduit or service agent through which it was being distributed for private corporations. The court answered that by a finding that the Government became the owner of the fertilizer at the manufacturing plants which were outside the State. Therefore it is held that the inspection fees were laid directly upon the United States, which could not be done.

The Kern-Limerick case involved the legality of the Arkansas gross receipts tax exacted of private contractors who had first purchased two expensive diesel tractors for use in constructing an ammunition depot for the United States. The opinion itself in that case distinguishes it from the King & Boozer case relied on in *Roane-Anderson Co. v. Carson, supra,* in the following language:

"The circumstances of the transaction would concededly make Kern-Limerick liable for the tax if the real purchaser were not the United States." [347 U.S. 110, 74 S.Ct. 405.]

Then again the opinion said:

"We find that the purchaser under this contract was the United States. Thus, King & Boozer is not controlling for, though the Government also bore the economic burden of the state tax in that case, the legal incidence of that tax was held to fall on the independent contractor and not upon the United States."

Now in the present case, as heretofore indicated, complainant in the instant case had to do its own financing because the Government was not obligated to advance any money but was simply to reimburse the contractor on expenditures finally approved by it but without interest on the capital employed or money borrowed by complainant. To that end complainant made arrangements with the National City Bank of New York for an overdraft agreement and when it received its monthly fee of $25,000 and its reimbursement checks the same were applied to reduce the above overdraft; likewise into the regular account in the Hamilton National Bank at Knoxville a revolving fund was maintained and there was deposited in that account all revenues from the operations of the above mentioned activities along with damage deposits by tenants occupying the residences which belonged to the Government and disbursements were made by the complainant of various sorts such as refunds to tenants, payment for employee's bond purchases, contract expenditures other than payrolls and salaries, and payrolls and salaries, without the Government ever having its hands on any of the money.

In other words, for example, all of these funds were collected and deposited and disbursed in the name of the complainant and not of the United States and these collections were used by the complainant in aid of its financing of the project.

The only obligation of the Government was to reimburse the complainant in accordance with the contract provisions and to pay the fixed monthly fee; complainant was not authorized to bind the United States to third persons and third persons could not look to the United States for payment, wherein the Kern-Limerick case is

clearly distinguished from the present one. It was only where on the termination of the contract that the Government would become liable for any obligations, commitments, etc., of the complainants where the cost of same would be reimbursable according to the contract.

In my view of this case none of these taxes are levied upon any property belonging to the United States but to the contrary the property of the United States is used as a measure in fixing the amount of tax against the contractor.

In *Esso Standard Oil Co. v. Evans,* 194 Tenn. 377, 250 S.W.2d 569, the distinction is clearly made. The attempt to collect an inspection fee on the Government owned gasoline was held invalid as being the direct tax on Government property, just as in *Mayo v. United States, supra,* whereas after this gasoline was taken from the river barges into storage tanks belonging to the Oil Company the privilege tax for the privilege of engaging in the business of storing gasoline was upheld. On appeal to the United States Supreme Court this privilege tax was upheld even though the Government ultimately had to pay it because it had agreed to assume liability for all State taxes. The opinion said that the Constitution does not extend sovereign exemption from State taxation to corporations or individuals, contracting with the United States, merely because their activities are useful to the Government, or because the tax would burden the Government financially. Further, that the State had not discriminated against the Federal Government by denying this immunity under the facts stated.

So it seems to me that in this case the fact that the tax is measured by the amount of Government property

received or the gross receipts consisting of the value of the property received plus any revenues from Government property is no reason to deny the State the right to collect the taxes even though the cost should ultimately fall on the Government. I therefore am of opinion that the decree of the Chancellor was correct.

PREWITT, JUSTICE, joins in this dissent.

On Petition to Rehear

NEIL, CHIEF JUSTICE.

The appellee in these causes filed a petition to rehear on May 11, 1956, and a supplemental petition to rehear on May 14, 1956, complaining (1) that the Court overlooked the fact that the taxes involved herein accrued in 1944, 1945, and 1946, and was prior to the Federal Statute governing atomic energy production at Oak Ridge; (2) the taxes herein are privilege taxes, not property taxes; (3) the legal incidence of the tax is the determinative test when implied constitutional immunity is claimed.

The supplemental petition to rehear is filed by the Attorney General of the State on behalf of the appellee and complains that the effect of our original opinion "may seriously limit the taxing power of the State." In response to the foregoing complaint we wish to emphasize that our original opinion limits the power of the State to its right to levy and collect a "gross receipts" tax from such persons, firms and corporations as may be exercising the privilege for and on behalf of themselves and must be distinguished from those who are exercising the privilege on behalf of the Federal Government.

At the outset we desire to say that we are mindful of the importance of this case to the State in the exercise of its sovereign power to levy and collect taxes.

These causes in no way involve the levying and collecting of an "ad valorem tax" upon the property of the United States Government. We have never thought of this case as involving any kind of a tax other than the right of the State of Tennessee to collect a "gross receipts" tax upon funds derived from the collection of revenue by Roane-Anderson upon property which belongs exclusively to the United States Government. We pointed out in the original opinion the fact that Roane-Anderson is the owner of no property in the Oak Ridge area of operations, and its acts do not amount to *engaging in any business for profit to itself*.

*Big* Government on a national level and *Big* Government on a local or State level, such as we have, and the conflict resulting from the need by each to collect sufficient revenue upon which to operate, poses the difficult question as to how far a State government may go in collecting its taxes without violating the Supremacy Clause of the United States Constitution. As we read the decisions they are in hopeless conflict. The Supreme Court at Washington undertook to dispel these conflicts in *State of Alabama v. King & Boozer,* 1941, 314 U.S. 1, 62 S. Ct. 43, 86 L.Ed. 3. But that case did not do very much toward laying down a positive rule as to when a State was operating within its own sovereign right to levy a privilege tax, as now appears in the recent cases of *Mayo v. United States,* 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504, and also *Kern-Limerick, Inc., v. Scurlock,* 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546, both of which were cited and relied on in our original opinion.

■ But first of all we will consider the complaint that the taxes here involved were for the years 1944, 1945 and 1946, which were prior to the creation of the Atomic Energy Commission. We may have erred in referring to the Atomic Energy Commission as being under contract with Roane-Anderson at that time. But it is not material. It can hardly be doubted that the contract here involved was between Roane-Anderson and the United States Government. Prior to the creation of the Atomic Energy Commission the operations at Oak Ridge were under the supervision and direction of what was known as ''The Manhattan Engineering District''. The following statement by counsel on behalf of Roane-Anderson Company relating to operations at Oak Ridge is true as a historical fact: ''During the war years and prior to January 1, 1947, the work at Oak Ridge was carried on under the authority of the President of the United States and the War Department pursuant to applicable laws and the Constitution of the United States.''

It cannot be denied that during this period, the sole activity at Oak Ridge was supplying the United States with atomic weapons. The same activities have since been carried on by the Atomic Energy Commission. In these circumstances we must adhere to our view, as formerly expressed in the original opinion, that Roane-Anderson was not engaged in any private business activity, but represented the Government in supervising and directing the use of governmental property in the Oak Ridge Area. In other words it was exercising a privilege on behalf of the Federal Government.

Able counsel for the State again insists that, ''The Congress of the United States has consistently and flatly refused to grant an exemption from state taxation to

government contractors", and that where the contractor is exercising a taxable privilege on behalf of the government it "is not such interference with the Federal Government as to render the taxation unconstitutional", citing *State of Alabama v. King & Boozer, supra.* No doubt most of the States had hoped that the King & Boozer decision would stand up, but the Court's ruling in the Mayo and Kern-Limerick cases, *supra,* made it inapplicable to the case at bar.

The counsel strongly rely on *Buckstaff Bath House Co. v. McKinley,* 308 U.S. 358, 60 S.Ct. 279, 281, 84 L.Ed. 322, as sustaining its position that the bare fact that the Government owns the property used in the exercise of the otherwise taxable privilege is not enough in itself *to exempt from State taxation,* and that privilege taxes could be collected.

In this case the taxpayer was operating a public bath house in Hot Springs, Arkansas, under the supervision of the United States Department of the Interior. The operator sought to enjoin the collection of a tax levied under a State Unemployment Compensation Law. The right of the State of Arkansas to collect this tax was upheld. This case differs from what we have here. The Buckstaff Bath House was conducting a private business *for profit,* not so in the instant case. As pointed out by Mr. Justice Douglas:

"Petitioner's lease from the Secretary of the Interior did not convert it into such an instrumentality. Petitioner *'is engaged in its own behalf, not the government's, in the conduct of a private business for profit'.* See *Federal Compress & Warehouse Co. v. McLean,* 291 U.S. 17, 23, 54 S.Ct. 267, 269, 78 L.Ed. 622 [627]. Though it acts with the Government's permis-

sion and has received a privilege from the Government, it does not exercise that privilege on behalf of the latter.'' (Emphasis supplied.)

Finally it is urged upon us: ''In view of these principles and holdings, (see also *Esso Standard Oil Co. v. Evans,* 194 Tenn. 377, 250 S.W.2d 569) it is most difficult to understand why a private, profit-type corporation like Roane-Anderson can exercise taxable privileges in Tennessee, *privileges for which all others must pay, and escape tax free.*'' To all of the foregoing we would readily agree if, and when, it can be pointed out in the record that Roane-Anderson is a ''profit-type corporation''; in other words that it is, as said in the Buckstaff case, *supra, '' 'engaged in its own behalf, not the government's, in the conduct of a private business for profit' ''.*

We do not consider the decision in the Esso case, *supra,* as controlling authority here because as said by Mr. Justice Gailor, it was engaged in a ''very substantial and lucrative business''. [194 Tenn. 377, 250 S.W.2d 573.] It received a per cent on every gallon of gasoline as compensation for storage, etc. It was thus engaged in business for profit for itself.

We rested our original decision upon the fact that Roane-Anderson *was not engaged in business on its own behalf for profit*; that its only property consisted of the monthly fee of $25,000 which it received for supervising and directing the operation of Government property at Oak Ridge.

We think we have made response to the first petition to rehear in dealing with the errors assigned herein by the Attorney General. The special counsel for the appellee has discussed issues that were dealt with at length in the original opinion. No new authority is cited that

has not been considered, and nothing new pointed out as having been overlooked by the Court.

We think we were on solid ground in holding that these "privilege" taxes (gross receipts) are indirectly exacted upon Government property, or the use of such property. As we construe the "Mesta" case, *United States v. County of Allegheny,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209, and *Mayo v. United States, supra,* the question is whether the tax is *on* Government property, or *against the activities* of the Government. In our opinion, whether it is one or the other, the tax is in violation of the Federal Constitution.

Contention is made by special counsel for the State that the repeal by the Congress of Section 9(b), 60 Stat. 755, of the Act creating the Atomic Energy Commission was authority in support of the State's right to exact the tax involved herein. We must disagree because the issue in these causes are entirely different from that made in *Roane-Anderson Co. v. Carson,* 192 Tenn. 150, 239 S.W. 2d 27. There is much commendation on the brief of counsel of the dissenting opinion. But this dissent, fine and logical as it was believed to be by the writer, as well as counsel, was rejected as not the law of the case. It was given "the evil eye".

Counsel further refers to the "able dissenting opinion" in the present case wherein the majority is taken to task for certain language used in the opinion, as well as other reasons why the majority was in error. But we cannot, for this reason, recede from the view heretofore expressed.

With all deference to counsel, and the dissent of our Associate Justices, we still feel that they are in error and that the majority opinion was correct.

The issues involved in these causes have been ably discussed at the bar of this Court, and likewise the petitions to rehear have been upon the same high plane.

Upon a careful consideration of the questions made on this appeal, we reaffirm our holding in the original opinion. The petitions to rehear are accordingly denied.

TOMLINSON and BURNETT, JUSTICES, concur.

PREWITT and SWEPSTON, JUSTICES, dissent.