[Civil No. 4695. Filed June 25, 1945.]

[160 Pac. (2d) 346.]

MARY JANE ALGER, Surviving Wife of S. W. Alger, Deceased, CARL C. KATLEMAN and MAURICE KATLEMAN, Appellants, v. BRIGHTER DAYS MINING CORPORATION, a Corporation, SAMOA GOLD MINES CORPORATION, a Corporation, GEORGE M. MITCHELL, Jr., WILLIAM HEMINGWAY, JOHN T. MacEVOY, and HERMAN BERGER, Appellees.

Mr. Carl D. Hammond, for Appellants.

Mr. Nicholas Martini, of Passaic, New Jersey, and Mr. Charles P. Elmer, of Kingman, Arizona, for Appellee Brighter Days Mining Corporation.

Mr. Charles P. Elmer, for Appellees George M. Mitchell, Jr., and William Hemingway.

MORGAN, J.—Plaintiffs were stockholders in Samoa Gold Mines Corporation. They brought this action on behalf of the corporation and its stockholders. The individual defendants constituted the board of directors of the Samoa Corporation. Defendants Mitchell, Hemingway and MacEvoy organized and were directors and officers of the Brighter Days Corporation. Both corporate defendants are Delaware corporations and were qualified to transact business in Arizona. They will be referred to as Samoa and Brighter Days respectively. The former corporation was organized about the year 1931, acquired and was until 1938 the legal owner of and in possession of three patented and seven unpatented mining claims

in Mohave County. During the year 1937, in a lien proceeding instituted by the plaintiff Alger, all of the property of Samoa was bought in by him at sheriff's sale. On February 9, 1938, he assigned his sheriff's certificate of sale to Tarr, McComb and Ware Commercial Company at Kingman. This concern was a creditor of Samoa and entitled to redeem from the Alger sale. The sheriff's deed was delivered to the Commercial Company which then became the legal owner of the property. It executed and delivered to Samoa an option providing for monthly payments beginning March 21, 1938, with eight per cent interest per annum on unpaid balances. Only one payment was made by Samoa, that of March 21st. The Commercial Company gave notice of forfeiture which became effective not later than July 13, 1938.

The corporation was without funds to either take up the option or to continue with the development of the mining property. It owed $7,500 to the Schroeder Trust Company of New York. The directors, the individual defendants, informally got together and agreed that under the circumstances it would be well to form a new corporation to take over the property. All of the stockholders in the old company who had paid cash, or its equivalent, for stock, were to be taken care of in the new company. Pursuant to this agreement, arrangements were made whereby one Allen J. Benz, Jr., a New Jersey lawyer, purchased the property from the Commercial Company, taking title in his name by deed executed July 19, 1938. During that month the defendants Mitchell, Hemingway and MacEvoy caused to be organized Brighter Days, its corporate structure being the same as Samoa, 1,500,000 shares, par value one dollar per share. On October 4, 1938, Benz deeded the property to Brighter Days for a consideration of 1,000,000 shares. The final disposition of this stock was not disclosed. Part of the issue, the amount not shown, was assigned to

Mitchell, Hemingway and MacEvoy, who were at that time respectively president, vice president and secretary of that concern and a majority of the board of directors. The company sold a considerable amount of stock, took possession of all of the property, and began operations thereon which apparently continued up to the time when this action was instituted. Some stock in the new company was issued to stockholders of the old corporation. The charter of Samoa was forfeited for nonpayment of taxes or fees by the state of Delaware about April 1, 1938.

The object of the action was to declare the deed to the Brighter Days to be void, and the defendant Samoa to be the owner of the property with the right to possession thereof. Damages were sought against Brighter Days and against defendants Mitchell, Hemingway and MacEvoy for the gross value of ores removed from the property, less certain credits.

After hearing the evidence, the trial court filed a written opinion and made rather elaborate findings of fact. The findings substantially covered the foregoing facts. Further additional findings were made by the court as follows:

The defendant Berger was instrumental in having the action commenced. He learned of the organization of Brighter Days in August, 1938, and knew at all times what was being done with respect to Samoa and Brighter Days. The minority stockholders including plaintiffs, were under no disability and were in possession of the facts. Plaintiffs stood by and refrained for more than three years before any legal action was commenced by them during which period large sums of money had been expended upon the property by Brighter Days, and numerous persons had purchased stock in the new company.

The court's conclusions of law were that plaintiffs were entitled to maintain a stockholders' action and that action could be maintained regardless of the fact

that Samoa had lost its charter; that on or after July 13, 1938, Samoa had no legal or equitable interest in the property or at the time the deed therefor was made by the Commercial Company to Benz; since there was no showing of fraud in allowing the option from the Commercial Company to expire, the directors of the company had the right to purchase the property formerly owned by it, and the property was not impressed with a new trust in favor of the stockholders of the old company; the burden was on plaintiffs to prove their allegations of fraud which they had failed to do; the plaintiffs and the old stockholders are guilty of laches in having failed to assert their rights promptly and are estopped from maintaining the action.

On these findings and conclusions, judgment was entered on behalf of the defendants and against the plaintiffs, denying the prayer of their complaint. From the judgment and from the order denying motion for new trial, plaintiffs prosecute this appeal. Alger having died, his wife was substituted in his place..

■ Plaintiffs have presented twenty-eight assignments of error, supporting them with numerous propositions. It would serve no useful purpose either to recite the assignments or the propositions. Briefly, plaintiffs take the position that inasmuch as the directors of the corporation stand in a fiduciary relation both to it and its stockholders, they cannot take advantage of such relationship for their own benefit. Any individual gain and profit they may make in connection with the property entrusted to their care will be viewed with jealousy and their actions set aside on slight grounds. The law is well settled as to this, and we have so held. *Monterey Water Co.* v. *Voorhees*, 45 Ariz. 338, 43 Pac. (2d) 196; *Phoenix Title & Trust Co.* v. *Alamos Land Co.*, 24 Ariz. 499, 211 Pac. 570; *Dragoon Marble & Min. Co.* v. *McNeish*, 28 Ariz.

96, 235 Pac. 401; *Garrett* v. *Reid-Cashion Land & Cattle Co.*, 34 Ariz. 245, 270 Pac. 1044.

▮ Plaintiffs also urge that the burden of proof was on the individual directors with respect to the fairness of the transaction challenged by plaintiffs. This is also the law. Garrett v. Reid-Cashion Land & Cattle Co., *supra; Starkweather* v. *Conner,* 44 Ariz. 369, 38 Pac. (2d) 311.

▮ Plaintiffs' position is that the evidence established that Mitchell, Hemingway and MacEvoy were guilty of fraud; first, because they acquired for themselves stock in the new corporation for the Samoa property; second, their failure to appear at the trial or to give testimony pertaining to the transaction, with which they alone were familiar, raises a presumption of fraud. Under such circumstances, when directors, at the expense of the stockholders, secure profits from a manipulation of the corporate property, and further fail to produce evidence which is peculiarly within their knowledge as to the transaction, fraud will be presumed. 37 C. J. S., Fraud, p. 401, § 95. We think this is good law if such are the facts. We have also held that where one is possessed of information pertaining to a transaction, which he fails to produce, presumptions will be indulged against him. Starkweather v. Conner, *supra; Southwest Cotton Co.* v. *Ryan,* 22 Ariz. 520, 199 Pac. 124.

The findings and conclusions of the trial court with respect to estoppel and laches are contested. Plaintiffs' contentions as to these will be discussed in due course.

▮ It is our view that the various principles to which we have alluded have no application to the facts in this case. Samoa was, as we see it, if not insolvent at least in failing circumstances. It could not meet its obligations. Its property had been sold out in judicial proceedings. The company had no funds to redeem. The directors endeavored to save

the property by securing an option from the Commercial Company which held the legal title. One payment of $200 was actually made on March 21, 1938. Default was made on April 21, and continued. Notice of forfeiture was given by the Commercial Company. The trial court found that the contract was terminated not later than July 13, 1938. The evidence and the law justifies this finding. The option provided that upon thirty days' notice the contract could be terminated unless default was cured within such period. The invocation of section 71–126, Arizona Code Annotated 1939, allowing additional periods before forfeiture may be enforced, even if applicable, is of no comfort to plaintiffs. The default occurred on April 21. The thirty additional days allowed by the law, less than twenty per cent of the purchase price having been paid, extended the nonforfeiture period only to May 21. The stautory grace period runs from the date of default, not from the date of termination of notice. *Whalley* v. *George,* 52 Ariz. 267, 80 Pac. (2d) 449; *Foster* v. *Bauman,* 34 Ariz. 274, 271 Pac. 30. Whether the statute applies to optional contracts is a question which we are not required to determine.

 The court's conclusion that there was no showing of fraud on the part of the directors in allowing the option to expire is supported both by the facts and the law. A director is under no duty to use his own resources either to acquire property for the corporation or to pay its debts. *Zeckendorf* v. *Steinfeld,* 12 Ariz. 245, 263, 100 Pac. 784; *Steinfeld* v. *Nielsen,* 15 Ariz. 424, 447, 139 Pac. 879. The proved and admitted facts were that Samoa had no money nor funds available; the directors were under no compulsion to make personal advances. It seems from the evidence that they did endeavor to raise money but without results. As heretofore shown in the statement of facts, it was then informally agreed, after

default had occurred in the option, that the property would be acquired, transferred to a new corporation, and that all of the stockholders who had invested money in Samoa would be cared for. These facts do not constitute proof of fraud. This is not a suit to impress a trust on stock received by the defendants nor to require the new corporation to transfer stock pro rata to the plaintiffs and other stockholders of Samoa. The purpose of this action is to set aside the whole transaction and revest the title in Samoa. The evidence indicates that stock was issued to some of the old stockholders and for aught we know all of the stockholders who actually invested money in the old corporation may have had stock issued to them.

Since there was no duty upon the directors to advance money for the payment of the option, and, as we have seen, that the option had expired and Samoa's rights were forfeited and terminated, as found by the trial court, on July 13, 1938, the law does not prohibit the directors from acquiring title to the property. At the time the title was acquired by Benz July 19, 1938, Samoa had no interest, actual or in expectancy, in the property. It seems to be settled that where a corporation has lost all right, title and interest in property which it once held, and such loss is not due to the mismanagement or connivance of the directors, the directors may thereafter purchase such property. This would appear to be the situation here. Samoa had reached the limit of its resources; it had lost its property, and for all practical purposes its corporate existence had ceased; its charter had been cancelled. In this situation the acquisition of the property formerly owned by it by its directors does not violate any fiduciary relations. Zeckendorf v. Steinfeld, *supra; Colorado & Utah Coal Co. v. Harris,* 97 Colo. 309, 49 Pac. (2d) 429; *Pioneer Oil & Gas Co. v. Anderson,* 168 Miss. 334, 151 So. 161; *Solimine v. Hollander,* 128 N. J. Eq. 228,

16 Atl. (2d) 203; 19 C. J. S., Corporations, p. 144, § 777.

 It is probable that the case made by plaintiffs was sufficient to place the burden of proof on the defendants. The plan to take over the property and organize a new corporation was consummated after the option had expired. However, it originated at a time when the corporation could have made good the default if it had been financially able. The trial judge may, therefore, have been wrong when he held the burden of proof was upon the plaintiffs. Even though the court may have been mistaken as to the law as to burden of proof, if notwithstanding this the judgment is correct, it must be upheld. *Miller* v. *Arizona Bank*, 45 Ariz. 297, 43 Pac. (2d) 518; *Dockery* v. *Central Arizona L. & P. Co.*, 45 Ariz. 434, 45 Pac. (2d) 656; *Tevis* v. *Ryan*, 13 Ariz. 120, 108 Pac. 461; *Harper* v. *Independence Dev. Co.*, 13 Ariz. 176, 108 Pac. 701; *Crook* v. *Crook*, 19 Ariz. 448, 170 Pac. 280. The rule is succinctly stated in the Miller v. Arizona Bank case, *supra*, as follows [45 Ariz. 297, 43 Pac. (2d) 528]:

" . . . It is the law that if it appears from the record as a whole that the final judgment was the only one which could be rendered, it is immaterial whether the court based it on the proper ground or not. . . ."

 To sustain the burden against the directors the evidence need not be adduced from them. It may come from the plaintiffs' case. *Nicholson* v. *Kingery*, 37 Wyo. 299, 261 Pac. 122. It must be borne in mind that Samoa was for all practical purposes insolvent. Minority stockholders under these circumstances may not object to the transfer of the assets to a newly formed company. Vol. 15 Fletcher's Cyc., Perm. Ed., 366, sec. 7220, Corporations. Transfer of assets of an insolvent corporation is not in fraud of rights of dissenting stockholders where it appears

nothing could have been salvaged if transfer had not been made. *Teller* v. *W. A. Griswold Co.*, 6 Cir., 87 Fed. (2d) 603. In order to maintain a representative suit on the ground of mismanagement of directors, a stockholder must show that his stock had, or would have had, a value but for the acts complained of. *Campbell* v. *Anniston Office Bldg. Co.*, 5 Cir., 73 Fed. (2d) 789. Nor, where the corporation is solvent, may minority stockholders complain against the transfer to a new corporation when they have had opportunity to become stockholders in the new company on the same basis as the majority. *Marks* v. *Merrill Paper Mfg. Co.*, C. C., 188 Fed. 850. A minority stockholder in a solvent corporation will not be granted relief against a voluntary reorganization where there has been no fraud nor mismanagement and he has been offered his share of stock in the new company or the cash value thereof, and where to grant relief would inflict great injury on innocent parties. *Treadwell* v. *United Verde Copper Co.*, 134 App. Div. 394, 119 N. Y. S. 112.

The evidence here at best indicates a voluntary reorganization. In such a case, where the corporation is insolvent, minority stockholders may not be put on an equal footing with stockholders of the new company who have contributed large sums to finance the new organization. Their rights are ordinarily limited to the recovery from the new company of the value of their stock in the old concern. *Gresham* v. *Island City Sav. Bank,* 2 Tex. Civ. App. 52, 21 S. W. 556. Where there has been no fraud nor bad faith and minority stockholders have not been frozen out, they cannot enjoin the sale of corporate property to the new company after the charter of the old corporation has expired. *Nowak* v. *National Car Coupler Co.,* 260 Ill. 260, 103 N. E. 222. Where a corporation is in financial straits and the directors have endeavored to get stockholders to join in a contribution

to prevent a sale upon foreclosure, and they then purchase the property at the sale and authorize the stockholders of the old company to participate in the new corporation on the same basis as the old, there is neither unfairness nor breach of trust. Such a sale was valid. *Beaumont* v. *Folsom,* ▪136 Neb. 235, 285 N. W. 547.

▪▪▪▪▪▪ The facts and circumstances appear to be sufficient to justify the court's findings that plaintiffs and all stockholders of Samoa were guilty of laches. The transactions complained of occurred in May and July, 1938. The deed to the new corporation was placed of record in October of that year. More than three years elapsed after the sale to Benz and almost three years after the recording of the deed to Brighter Days before the suit was instituted in September, 1941. During the three-year period stock was sold by the new corporation and various persons invested in it. It also spent considerable sums in the development of the property. It appears, and this was the trial court's finding, that the stockholders had knowledge of the transaction from 1938. We agree with the trial court that they were guilty of laches by unreasonable delay in taking action. It is well settled that a minority stockholder may lose his right to sue or defend on behalf of the corporation if unreasonably delaying, with knowledge of the facts, to bring suit. Here also there was acquiescence for a long period. Berger, whom the court found to be the moving factor in the institution of the action, received some stock in the new company. Alger had knowledge of the facts; he knew of the existence of Brighter Days and was advised that the property had been deeded to that concern. The court correctly held, under these circumstances, that plaintiffs' right to challenge the transactions complained of was lost by laches. 18 C. J. S., Corporations, p. 1290, § 569:

"A stockholder who wishes to sue or defend on behalf of the corporation must act promptly after acquiring knowledge of the conditions of which he complains or he will be deprived of the right to challenge them. His right to relief will be lost for laches if, with knowledge of the facts, he delays for an unreasonable time in bringing suit, . . . . In many cases, also, he may be deemed to have acquiesced in the conditions of which he complains, to have waived his right to object, or to have become estopped by his conduct, so as to be precluded from asserting rights or defenses of the corporation by maintaining a suit in equity . . . . Where the corporation is estopped, stockholders suing in its behalf are also estopped. . . .

"What period of delay will be held sufficient to bar complainant's right to relief depends on the circumstances of the particular case. There is no absolute rule as to what is unreasonable delay. . . .

"A court of equity may deny relief on the ground of laches, even though the suit is brought within the period of the statute of limitations. . . . "

The quotation from Cook on Corporations, 6th Ed., 732, appearing in *Smith* v. *Stone,* 21 Wyo. 62, 128 Pac. 612, 621, on the question of time within which a stockholder is required to bring an action, is pertinent:

"The length of time during which a stockholder may delay in bringing his suit varies with each case, according to the circumstances of that case. The court requires that reasonable promptness be exercised so that large investments of new money or changes in the ownership of the stock or property may not be prevented or jeopardized by an unreasonable delay on the part of a stockholder in objecting to the transaction."

Other assigned errors have been considered but need not be discussed since it is our view that the court's judgment was properly entered upon the issues made by the pleadings and upon the facts adduced. It must be understood, however, that the judg-

ment in this case will not constitute a bar to any action which may be brought by the plaintiffs or other stockholders of Samoa to enforce any rights they may have to stock in the Brighter Days Corporation.

The judgment is affirmed.

STANFORD, C. J., and LaPRADE, J., concur.