344 P.2d 1008

STATE TAX COMMISSION of the State of Arizona, Appellant,

v.

GRAYBAR ELECTRIC COMPANY, Inc., a corporation, Appellee.

No. 6399.

Supreme Court of Arizona.

Oct. 14, 1959.

Robert Morrison, Atty. Gen., of Arizona, Melvin J. Mirkin, Asst. Atty. Gen., for appellant.

Evans Hull, Kitchel & Jenckes, L. Ray Haire, Phoenix, for appellee.

STRUCKMEYER, Justice.

Pursuant to A.R.S. § 42–1339, appellee Graybar Electric Company brought suit to recover certain taxes paid under protest. The trial court entered judgment in its favor for the sum of $6,457.87, together with costs. From this judgment the Arizona Tax Commission has appealed.

In the year 1952, Grand Central Aircraft Company entered into a contract with the United States Air Force, designated as Facilities Contract AF33(600)9371. The contract provided for the construction and operation by Grand Central of certain electronic facilities near Tucson, Arizona. In the year of 1953, Grand Central purchased from Graybar, a New York corporation engaged in the national distribution of electrical equipment and related products primarily at wholesale, certain trailer-mounted

generator sets which were used in an electronics laboratory constructed pursuant to the Facilities Contract. At the time the generators were purchased by Grand Central, there was stamped upon the purchase order the following:

"This is to certify that the item requested on this purchase order is covered by USAF Facilities letter Contract No. AF 33(600)9371 dated 11 Feb. 1952 and will become the property of the U. S. Air Force upon delivery by the vendor."

The Facilities Contract was not offered in evidence in the court below, but two portions, and only these two portions, appear in a stipulation of facts in the case. They are:

"Title to all work under this contract, completed or in the course of manufacture by you, shall be in the Government. *Title to all items of facilities, materials, parts and equipment for which you will be entitled to be reimbursed under this contract is vested in the Government [i] upon delivery to you* at any point within the continental limits of the United States or [ii] at any place or time directed by the Contracting Officer and all such property shall remain personalty although it may be affixed to realty not belonging to the Government." [Emphasis supplied.]

\* \* \* \* \* \*

"The Government will pay to the contractor upon inspection and acceptance by the contracting officer all the items for the work specified \* \* \*."
The Commission assessed a 2% tax under the claimed authority of the Excise Revenue Act of 1935, § 73–1301 et seq., A.C.A. 1939, now A.R.S. § 42–1301 et seq., against appellee on the theory that the transactions constituted retail sales within the scope of the Act.

It has been appellee's position from the start that the sales of generators made by it to Grand Central were either (1) made to Grand Central as agent for the United States Government and, as such, exempt from taxation by the express provisions of § 73–1308, A.C.A.1939, now repealed, or (2) were not made at retail, being for resale by Grand Central to the Government, and thus not within the operations of the Excise Revenue Act. The court below, without making any finding of fact as to the precise basis of its determination, entered judgment in favor of Graybar. The Commission argues that neither theory of the case finds support in the evidence. Both parties have extensively argued the status of this transaction; however, like the trial court, we do not think it necessary to determine in which category it falls. Admittedly, if in either, appellee is entitled to recover in some amount.

■ There is a suggestion in the Commission's argument before this court that as a third possible alternative, Grand Central might have purchased the generators for its own use. This arises because there is no direct testimony as to the specific *use* made of the generators. It is argued that while the certification of title by Grand Central on its purchase order might be conclusive as between the Government and Grand Central, such cannot be binding on the right of the State of Arizona to levy and collect taxes. Roane-Anderson Company v. Evans, 200 Tenn. 373, 292 S.W.2d 398. From an evidentiary standpoint, except possibly between the parties to the Facilities Contract, the declarations of Grand Central as to the title of the property are not conclusive. Nonetheless, the certifications are some evidence of the fact, and since they stand unimpeached, they are entitled to consideration as part of the evidence in the case. The trial court could believe that Grand Central would not purchase property and then convey title to the United States unless the Government had an interest in it arising out of the agreement. Business corporations are neither so charitably inclined nor ordinarily endowed with such patriotic zeal.

■ The Commission further suggests that "Taking of title by the government is obviously a mere security device." This can be rejected as contrary to the normal inference to be derived from the stipulated facts in the case. As pointed out, the only portions of the Facilities Contract which were included in the record are the two quoted portions, supra. Had other portions of the contract, or the contract as a whole, reasonably supported the Commission's position, such should have been produced. Where such vital information is readily available to a party, it can only be presumed from the failure to produce it that the inference is adverse. Alger v. Brighter Days Mining Corporation, 63 Ariz. 135, 160 P.2d 346.

■■ Since no evidence was introduced justifying the hypothesis that the Government took title merely as a security device, and since the certification delivering title to the United States Government is uncontradicted by any evidence in the record, the trial court was justified in rejecting the Commission's position that the property was purchased by Grand Central solely for its own use. Thus the record, both before this court and the trial court, justifies either of two possible conclusions; namely, that the generators were purchased by Grand Central as an agent of the Government or for resale to the Government. It is unnecessary to decide the exact status of Grand Central in the transaction, for in either event, the generators were not subject to an exaction by the State of Arizona.

■ The Commission predicates its case in part on the proposition that the bur-

den to establish appellee's status was on it as the taxpayer. It is true that the burden of proof was initially on Graybar, for laws exempting property from taxation are to be strictly construed and the presumption is always against the exemption. City of Phoenix v. Bowles, 65 Ariz. 315, 180 P.2d 222. However, a presumption is raised only in the absence of evidence. It is purely an arbitrary rule to be applied when there is no evidence to the contrary. If evidence contradicting the presumption is received, the presumption disappears and the trial court is bound to follow the usual rules of evidence in reaching the ultimate conclusion of fact. State Tax Commission v. Phelps Dodge Corporation, 62 Ariz. 320, 157 P.2d 693. While the facts in support of the judgment are scanty as compared with those facts found in Avco Manufacturing Corporation v. Connelly, 145 Conn. 161, 140 A.2d 479, yet they are sufficient to retire the presumption.

■ The trial court could have found that the generators purchased from Graybar constituted machinery used in the Grand Central electronics laboratory. This laboratory was constructed pursuant to the Facilities Contract and used entirely for research work in the field of electronics with particular reference to aircraft application. It was stipulated that the use by Grand Central of the laboratory was " * * * as directed by the United States Government." Since the generators were used as directed by the United States and the title thereto was in the Government, it can be logically concluded that the initial acquisition by Grand Central was either as an agent of the Government or for immediate resale to the Government.

■ The established rule in this jurisdiction is that where the trial court, sitting without a jury, does not make findings of fact and conclusions of law, on appeal all reasonable inferences supported by the evidence must be taken in favor of the appellee. If there is any evidence to support the judgment, it must be affirmed. Rosen v. Hadden, 81 Ariz. 194, 303 P.2d 267; Grizzle v. Runbeck, 74 Ariz. 92, 244 P.2d 1160. If the facts are not sufficient to convince the Commission, we can say no more than that it, too, had a burden which was to convince the trial court. This burden would have been sustained by the introduction of some evidence leading to contrary inferences other than those espoused by appellee. The Commission has not seen fit to do so. At this late date we can only assume that it could not have done so.

The final matter before the court calls for an interpretation of the stipulation into which the parties entered. The stipulation, dated June 13, 1956, reads as follows:

"In computing the error factor of 1.68 as mentioned in paragraph 4 of Exhibit 'A' to plaintiff's Complaint the

defendant included as taxable sales items totalling $47,108.75 as listed on Schedule 'A' attached hereto and made a part hereof. To the extent that the Court may find that sales listed on Schedule 'A' are non-taxable, or the tax already paid with respect to any such sale, the error factor of 1.68 should be proportionately reduced and the additional assessment levied against plaintiff accordingly reduced."

The dispute concerns the sum of $9,279.27 which represented sales that were made by Graybar during the latter part of June, 1955. Graybar claimed that these sales were not taxed because of an error in billing. However, the clerical oversight was immediately corrected and the tax was paid in July, 1955. This occurred before the tax audit by the Commission. The question is whether the "error factor" should have been reduced because these sales were sales on which the tax had already been paid within the wording of the stipulation.

 The language of the stipulation seems clearly to require the reduction of the "error factor" since the tax was admittedly paid on these sales. It should be noted that the attorney for the state agreed to the stipulation many months after the appellee paid the tax. A simple inspection of the records in the Commission's office would have disclosed just which sales were affected by the stipulation. We think that it is now too late to complain that the "er-ror factor" should not be reduced in accordance with the plain language of the stipulation.

The judgment as entered by the court below is affirmed.

PHELPS, C. J., and UDALL, JOHNSON, and BERNSTEIN, JJ., concurring.