527 P.2d 100

**Edna May TREVILLIAN, Appellant,**

v.

**A. R. LEE and Audrey Lee, his wife, and Stewart Title & Trust of Phoenix, an Arizona corporation, Appellees.**

No. 11680.

Supreme Court of Arizona,
In Division.

Oct. 18, 1974.

Raineri, Raineri & Raineri by Joseph C. Raineri, Sr., Scottsdale, for appellant.

Robert C. Moore, Phoenix, for appellees Lee.

HOLOHÁN, Justice.

Edna May Trevillian, hereinafter called the buyer, brought an action against A. R. Lee and Audrey Lee, his wife, hereinafter called sellers, for rescission of an agreement for the sale of real estate. Judgment was entered in favor of the sellers and the buyer appealed.

The appeal was filed in the Court of Appeals, but this Court assumed jurisdiction over the matter pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A, A.R.S.

The facts giving rise to this controversy are these: On August 25, 1966 A. R. Lee

and Audrey Lee, his wife, entered into a contract to sell certain real property to Jean E. A. Trevillian and Edna May Trevillian as joint tenants. The contract provided for a purchase price of $6,995, payable $150 to the sellers directly before signing the contract and $716.20 to Stewart Title and Trust of Phoenix for the benefit of the sellers. The balance was to be paid in monthly installments of $55.75 on or before the first day of each month, beginning January 1, 1967 with interest on all unpaid principal at 6% per annum. Time was declared of the essence. The contract contained the following default provision:

"Should Buyer default in making any payment, or in fulfilling any obligation hereunder, Seller, may, at his election, enforce a forfeiture of the interest of Buyer, in the manner provided in the escrow instructions or supplemental escrow instructions given to the Stewart Title & Trust of Phoenix in connection with this transaction, in which event, upon the enforcement of such forfeiture, Buyer shall forfeit any and all rights and interests hereunder in and to the real property hereinbefore described and appurtenances, and Buyer shall surrender to Seller, forthwith, peaceable possession of said property, and shall forfeit to Seller as liquidated damages any and all payments made hereunder, together with any and all improvements placed on or in said property, but this provision shall not affect any other lawful right or remedy of Seller."

Escrow instructions to Stewart Title, executed by the parties, contained the following provision relating to cancellation of the contract:

"28. If Seller elects to forfeit such agreement by notice, Seller shall do so through Escrow Agent by delivering to Escrow Agent a written declaration of forfeiture directed to Buyer together with Escrow Agent's established fee for services rendered in connection with forfeitures. Escrow Agent shall, within three days thereafter, send a copy of said declaration to Buyer in the manner provided herein for the mailing of Notices, Demands or Declarations. If Buyer fails to comply with the terms of such agreement to the date of such compliance before the expiration of ten days from the date said copy was deposited in the United States mail as herein provided, Escrow Agent is authorized to deliver to Seller the documents and money deposited under these instructions or under such agreement."

The sellers executed a warranty deed in favor of the buyers and the buyers executed a quitclaim deed in favor of the sellers. These documents were delivered in escrow with Stewart Title.

Prior to the commencement of this action, Mr. Trevillian died and Edna May Trevillian took the property as surviving joint tenant.

The buyer failed to make the January and February, 1967 payments. The sellers elected to forfeit the agreement and notified Stewart Title who in turn sent declaration of forfeiture to the buyer.

Thereafter the buyer sent to the Stewart Title Company a Notice to Cease, Desist and Discontinue Declaration of Forfeiture.

Stewart Title did nothing further in the matter and the quitclaim deed deposited by the buyer was never recorded.

In the latter part of March, 1967, the sellers sold the property to a third party.

In March, 1968 the buyer brought this action to rescind the agreement for sale and asked return of moneys paid by buyer to the sellers.

The buyer's contention on appeal is that the sale of the property by the sellers constituted a rescission of the contract at law which entitled her to return of money paid the sellers.

We must answer the following question: Was there a valid forfeiture of the contract prior to the sale of the property by the sellers?

If there was such a valid forfeiture then there was no contract between the parties at the time of the sale of the property by the sellers. The sellers could not be held to rescind a contract which did not exist.

Time was of the essence of the contract and the buyer was in default by failing to make the January 1, 1967 payment. The failure to pay constituted a material breach of contract. The sellers were entitled to treat the contract as terminated.

"Where time is of the essence of the contract, a default in payments entitles the sellers to treat the contract as at an end." Sturm v. Heim, 95 Ariz. 300, 303, 389 P.2d 702, 704 (1964).

The manner in which the sellers could enforce a forfeiture was governed by the terms of the contract and the statutory provisions.

Generally the law does not favor forfeitures. A party seeking a forfeiture must comply strictly with all contract requirements. Covington v. Basich Bros. Const. Co., 72 Ariz. 280, 233 P.2d 837 (1951). The sellers strictly complied with the terms of the escrow instructions and gave Stewart Title a written declaration of forfeiture directed to the buyer. The declaration was received by the Stewart Title Company on February 7, 1967. The agreement provides that the escrow agent should, within three days thereafter, send a copy of the declaration to the buyer. It further provided that the forfeiture would become effective ten days after the deposit of the declaration in the mail by the escrow agent.

Although the record does not show the date the escrow agent mailed the declaration, the parties stipulated that the terms of the escrow instructions were complied with. We must therefore conclude that the declaration was mailed to the buyer no later than February 10, 1967 and the buyer was notified that the contract would be cancelled at the end of the ten-day grace period.

The buyer made no effort to remedy her default. There was a forfeiture of the agreement by at least February 20, 1967 and the buyer's equities in the property were also terminated.

"After the vendor's election to rescind and notice of intention, the contract is terminated. At the conclusion of the time specified in the notice of intention to declare a forfeiture the purchaser's interest in the contract is terminated." 91 C.J.S. Vendor & Purchaser § 139(b)(6) (1955).

In Brecheisen v. Paris, 103 Ariz. 61, 63, 436 P.2d 610, 612 (1968), we held:

"We must conclude that since the escrow instructions and the notice of forfeiture each provided for the forfeiture to become effective ten days after the deposit of such notice in the mail, that the expiration of the ten day period was a requisite to the effectiveness of such forfeiture."

The failure to record or deliver to the seller the quitclaim deed deposited with the escrow agent by the buyer does not affect the validity of the forfeiture of the buyer's interest. Such quitclaim deed would only show the reversion to the seller of any interest the buyer might have had in the property, which otherwise would not appear on the record. Brecheisen v. Paris, *supra.*

When the forfeiture was completed, any interest the buyer had in the property was terminated without the necessity of further transfer.

The buyer was in default in the payment under the terms of the contract for two months before the Declaration of Forfeiture was given. She had paid less than 20% of the purchase price. Under A.R.S. § 33–741(A)(1) she had 30 days in which to bring her payments up to date. This statutory grace period runs from the date of the default, in this case January 1, 1967, and not from the date of the Declaration of Forfeiture. Alger v. Brighter Days Min-

ing Corp., 63 Ariz. 135, 160 P.2d 346 (1945); Glad Tidings Church of America v. Hinkley, 71 Ariz. 306, 226 P.2d 1016 (1951).

The buyer, having defaulted in payments, and the sellers, having complied with the terms of the agreement between the parties and the statutory provisions, the contract was cancelled and the buyer's interest in the contract terminated prior to the March sale of the property by the sellers.

The buyer contends that the Notice to Cease and Desist stopped the forfeiture from becoming final. We find no merit in this contention. There was no provision in the contract for such a notice and it had no legal effect.

Judgment affirmed.

HAYS, C. J., and CAMERON, V. C. J., concur.