NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SMARTCOMM LICENSE SERVICES LLC, *Plaintiff/Appellant*,

*v.*

JON PALMIERI, et al., *Defendants/Appellees*.

No. 1 CA-CV 16-0265, 1 CA-CV 16-0281 (Consolidated)
FILED 1-9-2018

Appeal from the Superior Court in Maricopa County
No.  CV2010-032209
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Wilenchik & Bartness, PC, Phoenix
By Dennis I. Wilenchik, Tyler Q. Swensen, David Timchak,
    Thomas E. Lordan
*Co-Counsel for Plaintiff/Appellant Smartcomm*

Smartcomm, LLC, Phoenix
By Michael R. Somers
*Co-Counsel for Plaintiff/Appellant*

Osborn Maledon, PA, Phoenix
By Scott W. Rodgers
*Counsel for Defendant/Appellee Palmieri*

Tiffany & Bosco, PA, Phoenix
By Lance R. Broberg, Timothy C. Bode
*Counsel for Defendants/Appellees Alcorn et al.*

Thomas E. Littler, Esq., Phoenix
By Thomas E. Littler
*Counsel for Defendant/Appellee Spectrum*

---

## MEMORANDUM DECISION

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Jon W. Thompson and Judge John C. Gemmill[1] joined.

---

**J O N E S**, Judge:

**¶1**　　　Smartcomm License Services, L.L.C. (Smartcomm) appeals the trial court's grant of summary judgment in favor of Appellees David Alcorn Professional Corporation; David and Elizabeth Alcorn, Janus Spectrum, L.L.C. (collectively, the Alcorn Defendants); and Jon Palmieri. Smartcomm also appeals the trial court's denial of an application for an order to show cause. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**　　　Smartcomm was organized to help consumers prepare and file applications to purchase cellular spectrum licenses[2] from the Federal Communications Commission (FCC). Smartcomm hired Kent Maerki,

---

[1]　　The Honorable John C. Gemmill, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2]　　In 2004 and 2005, the FCC announced that a large number of 800 MHz licenses vacated by Sprint, usable for cellular and broadband multimedia services, would become available for purchase at some later date. Smartcomm's business model was to prepare the applications ahead of the release date, so that its clients would be the first in line to purchase the licenses.

2

David Alcorn Professional Corporation (DAPC), and Jon Palmieri as independent contractors to solicit customers for Smartcomm. Smartcomm entered into separate agreements with all three independent contractors and furnished each with company materials Smartcomm alleged were confidential and contained trade secrets. The contracts contained confidentiality provisions that required the return of the confidential company materials upon termination of the agreement. However, the contracts did not contain non-compete provisions. Smartcomm eventually terminated its arrangement with Maerki, DAPC, and Palmieri for breach of contract. Smartcomm claims that, in the course of their business relationship, Maerki, David Alcorn, and Palmieri obtained Smartcomm's client list and retained copies of documents containing trade secrets following their terminations, which they then used to form a competing company, Janus Spectrum, L.L.C. (Janus).

¶3            Smartcomm initially filed suit only against Maerki, but later amended its complaint to include the Alcorn Defendants and Palmieri. The first amended complaint included claims of breach of contract (Claim Three), breach of the covenant of good faith and fair dealing (Claim Four), misappropriation of trade secrets (Claim Seven), unfair competition (Claim Eight), tortious interference with business relations (Claim Nine), breach of the duty of loyalty (Claim Eleven), aiding and abetting (Claim Thirteen), and conspiracy (Claim Fourteen).

¶4            This case languished in the discovery process, with all parties alleging discovery abuses. Indeed, the trial court ultimately struck the answer filed by Maerki and associated defendants (collectively, the Maerki Defendants) as a discovery sanction and entered default judgment against the Maerki Defendants for approximately $28 million. Although the Maerki Defendants are not parties to this appeal, Smartcomm relied upon the default judgment against the Maerki Defendants in its attempt to overcome a motion for partial summary judgment.

¶5            Over the course of addressing four motions for partial summary judgment, the trial court resolved all claims against Smartcomm. After the court entered final judgment and awarded Appellees their attorneys' fees, Smartcomm appealed, arguing the court erred in resolving each partial summary judgment. Additionally, Smartcomm argues the trial court erred when it denied an application for an order to show cause regarding allegations the Alcorn Defendants and Palmieri violated a permanent injunction against contacting Smartcomm's clients. We have

3

jurisdiction over Smartcomm's timely appeal pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1)[3] and -2101(A)(1).

## DISCUSSION

**¶6**        We review a trial court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-prevailing party. *Salib v. City of Mesa*, 212 Ariz. 446, 450, ¶ 4 (App. 2006) (citing *Romley v. Arpaio*, 202 Ariz. 47, 51, ¶ 12 (App. 2002)). Summary judgment is proper if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). Summary judgment is also proper when the facts supporting a claim "have so little probative value, given the quantum of evidence required," that no reasonable person could find for its proponent. *Orme Sch.*, 166 Ariz. at 309.

## I.        Motion for Partial Summary Judgment on Damages (Damages MPSJ)

**¶7**        The Alcorn Defendants filed the Damages MPSJ in November of 2013, arguing Smartcomm had failed to establish any material fact of damages. Both parties filed numerous supplemental pleadings on this motion and had ample time and opportunity to produce the necessary documents. The trial court ultimately granted summary judgment on all but one claim in favor of the Alcorn Defendants, finding Smartcomm did not "establish either the fact of damages or an amount of damages attributable to Defendants' conduct." The court denied the Alcorn Defendants' summary judgment on Smartcomm's misappropriation of trade secrets claim (Claim Seven). Smartcomm appeals the ruling, arguing: (1) the court erred by entering judgment before the close of discovery, and (2) Smartcomm presented sufficient evidence of damages.

**¶8**        We reject Smartcomm's argument that the trial court erred by ruling upon the Damages MPSJ before the close of discovery. Although Smartcomm raised the issue within its response to the Damages MPSJ,[4] Smartcomm later waived the claim when it moved to vacate the summary

---

[3]        Absent material changes from the relevant date, we cite the current version of rules and statutes.

[4]        Indeed, Smartcomm successfully obtained additional time to obtain "crucial discovery" prior to filing its response. *See* Ariz. R. Civ. P. 56(d) (previously Rule 56(f)).

judgment, admitting: "Smartcomm is not arguing that it did not have an opportunity to present evidence. Rather, it is arguing that the Court ignored evidence Smartcomm presented and made fundamental errors in applying the law to the evidence before it." Having taken this position, Smartcomm is estopped from now claiming it "was denied the opportunity to address [discovery deficiencies] because of the trial court's ruling prematurely granting summary judgment." *Cf. Adams v. Bear*, 87 Ariz. 288, 294 (1960) ("[A] party is bound by his judicial declarations and may not contradict them in . . . subsequent proceedings involving the same parties and questions.") (citations omitted); *Martin v. Wood*, 71 Ariz. 457, 459 (1951) (proscribing "the mischiefs" that would occur "from the destruction of all confidence in the intercourse and dealings of men, if they were allowed to deny that which by their solemn and deliberate acts they have declared to be true") (quoting *Hatten Realty Co. v. Baylies*, 290 P. 561, 566 (Wyo. 1930)); *Miles v. Franz Lumber Co.*, 14 Ariz. 455, 457 (1913) ("[A party] should not be permitted to 'blow hot and cold' with reference to the same transaction or insist at different times on the truth of each of two conflicting allegations according to the promptings of his private interest.").

¶9 Smartcomm next argues it presented sufficient evidence of damages at summary judgment. Smartcomm presented three theories of recovery for damages: (1) refund obligations incurred when Smartcomm's clients lost licenses to competing Janus clients, (2) all of Janus's profits, and (3) attorneys' fees incurred filing a series of applications with the FCC urging them to reject Janus clients' license applications.

### A. Refund Obligations

¶10 A party claiming damages must disclose "a computation and measure of each category of damages alleged by the disclosing party, the documents and testimony on which such computation and measure are based, and the name, address, and telephone number of each witness whom the disclosing party expects to call at trial to testify on damages." Ariz. R. Civ. P. 26.1(a)(7). If a party fails to produce evidence to support its claims for damages, summary judgment is appropriate. *See United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 139, ¶ 21 (App. 2006). Likewise, when "vital information is readily available to a party, it can only be presumed from the failure to produce it that the inference is adverse." *State Tax Comm'n v. Graybar Elec. Co.*, 86 Ariz. 253, 257 (1959) (citing *Alger v. Brighter Days Mining Corp.*, 63 Ariz. 135, 141 (1945)).

¶11 Despite specific requests from the Alcorn Defendants on at least four occasions, Smartcomm did not produce sufficient evidence of the

existence of any refund damages. "Refund damages," for purposes of this litigation, were defined as the partial refunds Smartcomm owed its clients when its clients' applications for a license were unsuccessful. Initially, Smartcomm failed to even allege refund damages, instead arguing only it could recover all of Janus's allegedly ill-gotten profits as damages. Resting entirely on the ill-gotten profits theory, Smartcomm argued the Alcorn Defendants had exclusive control of the evidence needed to prove damages.

¶12        After repeated requests from the Alcorn Defendants to disclose supporting documents such as contracts, refund checks, names of clients who received refunds, and affidavits from witnesses, Smartcomm finally filed supplemental disclosure statements purporting to address the refund damages. Those disclosure statements, which Smartcomm attached to its first supplemental response to the Damages MPSJ, contained a spreadsheet that grouped Smartcomm's refund obligations into four categories. Only the first category identified refunds Smartcomm had already paid. The other three categories contained, at best, speculative calculations of future losses.

¶13        Although Smartcomm's chief executive officer verified the ninth and tenth supplemental disclosures, the speculative nature of the claims contained within those disclosures failed to establish a genuine issue of material fact. *See Coury Bros. Ranches v. Ellsworth*, 103 Ariz. 515, 521 (1968) ("Damages that are speculative, remote or uncertain may not form the basis of a judgment."). Affidavits and testimony by plaintiffs, without supporting documentation, may be found insufficient to overcome summary judgment. *See Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963) (holding the plaintiffs' testimony, without supporting business and tax records, was insufficient to overcome summary judgment); *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 583, ¶ 42 (App. 2015) (concluding the plaintiff's testimony and conclusory statements regarding damages, "unsupported by any documentary evidence," were speculative).

¶14        In this case, we find that neither the ninth nor tenth supplemental disclosures created a genuine issue of material fact sufficient to avoid summary judgment. Despite multiple discovery requests by the Alcorn Defendants, Smartcomm only produced the names of seven clients whom Smartcomm claimed had received refunds of around $127,000 to support its claimed damages in excess of $17 million. Of these seven clients, Smartcomm only disclosed two refund check stubs, and one of those does not match the descriptions listed within Smartcomm's spreadsheet. Further, Smartcomm failed to attach any contracts or affidavits from clients who assertedly received those refunds. This was the only disclosure of

alleged refunds Smartcomm ever produced before the trial court ruled on the Damages MPSJ. Such paltry evidence in support of the substantial damage assertion, particularly when Smartcomm was in exclusive possession of the documents necessary to support its refund obligations claim, has "so little probative value, given the quantum of evidence required," that no reasonable person could find for its proponent. *Orme Sch.*, 166 Ariz. at 309; *see also Graybar Elec.*, 86 Ariz. at 257 (citing *Alger*, 63 Ariz. at 141).

**¶15** The only other evidence Smartcomm presented was the $28 million default judgment entered against the Maerki Defendants by a commissioner of the superior court. In its second supplemental response to the Damages MPSJ, Smartcomm advised the trial court it had presented evidence of its damages at the default judgment hearing through exhibits and testimony, but it did not attach the exhibits or testimony to its supplemental response.[5] Smartcomm instead argued that the default judgment was conclusive proof that Smartcomm had both disclosed and proved its damages because the damages were "essentially the same against not just the Maerki Defendants, but all of the Defendants."

**¶16** Smartcomm's reliance upon the default judgment is misplaced. The Alcorn Defendants were not parties to that proceeding and did not have an opportunity to defend their interests. Moreover, because the trial court did not oversee the default judgment against the Maerki Defendants, it had no way to review the evidence produced at that hearing, whether testimonial or documentary, that ultimately prompted the commissioner's determination of damages. Additionally, the minute entry from the default hearing states, "[t]he court must take all of the allegations as established for purposes of determining damages against the defaulted Maerki Defendants," indicating Smartcomm proceeded with a much lower burden of proof than that required to withstand summary judgment.

---

[5] Smartcomm references the exhibits in its opening brief, but does not indicate where those exhibits might be found within the record. Moreover, the record does not indicate the exhibits were ever submitted to the trial court or entered into evidence. Thus, although Smartcomm argues "Appellees cannot plausibly claim that the evidence presented at the Default Judgment Hearing should not be considered against them here," we are unable to determine whether that is the case, or otherwise consider the evidence. *See GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 4 (App. 1990) ("An appellate court's review is limited to the record before the trial court.") (citing *Schaefer v. Murphey*, 131 Ariz. 338, 343 (App. 1981), and *Cimino v. Always*, 18 Ariz. App. 271, 272 (1972)).

Although we express no opinion as to whether the commissioner applied the correct burden of proof to the damages hearing, we hold that, in evaluating whether summary judgment was appropriate, Smartcomm's allegations presented in another court before another judicial officer could not be taken as established fact. *See* Ariz. R. Civ. P. 56(e) (stating a party opposing summary judgment "may not rely merely on allegations or denials of its own pleading," but rather "must . . . set forth specific facts showing a genuine issue for trial"). Stated simply, Smartcomm was required to produce evidence of its asserted refund obligations but failed to do so.

### B.       Attorneys' Fees from FCC Litigation

**¶17**       As part of its claim for damages, Smartcomm sought recovery of more than $400,000 in attorneys' fees accrued when it petitioned the FCC to reject competing applications from Janus clients. Much like the refund damages, Smartcomm first raised this issue late in the pleadings and provided no documented evidence to support its claim. Smartcomm's only reference to these attorneys' fees appeared in its ninth supplemental disclosure, in which Smartcomm alleged: "Janus's unfair competition also caused Smartcomm to file its Petition to Deny with the FCC, in which it incurred substantial attorneys' fees and costs." At summary judgment, Smartcomm did not provide a calculation of its fees or any documents to support the allegation.[6]  In no fashion was Smartcomm's evidence in support of this claim sufficient. *See, e.g., Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 188 (App. 1983) (detailing the information required to substantiate a claim for attorneys' fees). Accordingly, Smartcomm failed to produce sufficient evidence at summary judgment to support its claims for damages related to attorneys' fees, and we affirm the trial court's summary judgment as it pertains to attorneys' fees.

### C.       Janus's Profits

**¶18**       A party opposing summary judgment must contest the accuracy of the moving party's evidence with specific, admissible facts. *See* Ariz. R. Civ. P. 56(e); *Florez v. Sargeant*, 185 Ariz. 521, 526-27 (1996). "Affidavits that contain inadmissible evidence . . . may provide a 'scintilla' or create the 'slightest doubt' and still be insufficient to withstand a motion for summary judgment." *Orme Sch.*, 166 Ariz. at 309 (citations omitted).

---

[6]       Indeed, the first time Smartcomm provided the trial court with a dollar amount for its alleged attorneys' fees was in its motion for new trial.

¶19 After the Alcorn Defendants filed the Damages MPSJ, Smartcomm sought Rule 56(d) relief for additional discovery, arguing the Alcorn Defendants had not disclosed Janus's financial documents, which Smartcomm needed to calculate its damages. Smartcomm argued the trial court could require the defendants to disgorge their profits because they had misappropriated Smartcomm's trade secrets. The trial court granted the request, and, a few months later, Janus filed for bankruptcy. As part of its bankruptcy proceedings, Janus filed several financial documents detailing its operating expenses and profits. Janus and the Alcorn Defendants also had their electronic devices imaged and produced by a third party, which was then disclosed to Smartcomm.

¶20 Smartcomm again relied upon its ninth and tenth supplemental disclosure statements. The ninth disclosure statement references the bankruptcy documents and provides specific calculations from them. However, the documents themselves were not disclosed. While the documents themselves may have been admissible, Smartcomm's allegations, even when verified, that it saw the financial documents and accurately calculated the damages, are not. Accordingly, we conclude Smartcomm failed to present sufficient evidence at summary judgment of Janus's profits.

¶21 Under each of the three theories of recovery Smartcomm asserted, it failed to provide the trial court with sufficient evidence to survive summary judgment, and we affirm the court's grant of partial summary judgment in favor of the Alcorn Defendants on Claims Three, Four, Eight, Nine, Eleven, Thirteen, and Fourteen.[7]

### D. Palmieri Motion for Partial Summary Judgment

¶22 Following the trial court's grant of summary judgment in favor of the Alcorn Defendants, Palmieri filed his own MPSJ on all claims except Claim Seven (misappropriation of trade secrets) on the same basis. Smartcomm responded only by referencing what had been its unsuccessful pleadings from the Alcorn Damages MPSJ and provided no new arguments or evidence. Consistent with its earlier decision, the trial court ruled in favor of Palmieri, citing Smartcomm's failure to make any new argument. We affirm the court's grant of summary judgment for the reasons stated in Part I(A)-(C), *supra*.

---

[7] The remaining claim, alleging misappropriation of trade secrets, was dismissed in a later summary judgment. *See infra* Part II.

## II. Partial Summary Judgment on Trade Secret Claims

¶23 Smartcomm argues the trial court erred in finding there was no genuine dispute as to any material fact regarding Count Seven, alleging misappropriation of trade secrets. In a supplemental disclosure, Smartcomm alleged the defendants misappropriated nine trade secrets. Smartcomm described the first two alleged trade secrets as "Smartcomm's list of customers," and "Smartcomm's list of Independent Marketing Representatives." The other seven alleged secrets were part of an "advertisement" or marketing package Smartcomm distributed broadly to over three thousand potential customers.

¶24 "To establish a claim for misappropriation of a trade secret, the claimant must first prove a legally protectable trade secret exists." *Calisi v. Unified Fin. Servs., L.L.C.*, 232 Ariz. 103, 106, ¶ 14 (App. 2013). Arizona has adopted the Uniform Trade Secrets Act (UTSA), A.R.S. §§ 44-401 to -407, which defines "trade secret" as:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that both:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

A.R.S. § 44–401(4). Thus, "the two-part inquiry under the UTSA focuses on: first, whether the subject matter of the information is secret; and second, whether reasonable efforts have been taken to keep the information secret." *Calisi*, 232 Ariz. at 106, ¶ 15 (citing A.R.S. § 44-401(4), and *Enter. Leasing Co. of Phx. v. Ehmke*, 197 Ariz. 144, 149-50, ¶¶ 15, 22 (App. 1999)).

### A. Marketing Materials

¶25 We need not decide whether the subject matter of the marketing materials that Smartcomm alleges were misappropriated was secret because it failed to produce evidence that it made reasonable efforts to protect the information. The material facts in this regard are not in dispute. Smartcomm admitted it sent its marketing package, complete with what it asserts to have been highly profitable "trade secrets," to over three thousand potential clients. The recipients were not employees or even

existing clients of Smartcomm, but potential clients and can aptly be described as "the public at large." Moreover, the marketing materials were sent to these potential clients without first obtaining a non-disclosure agreement or otherwise preventing subsequent distribution or use by the recipients.

**¶26** Smartcomm, relying upon *Ehmke*, argues that the mass mailing was a "limited publication for a restricted purpose," and therefore it did not relinquish its secrecy. *See Ehmke*, 197 Ariz. at 150, ¶ 23 (noting "the owner of a trade secret does not relinquish its secret by disclosure to employees on a necessary basis or by limited publication for a restricted purpose") (citing *Metallurgical Indus., Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986)). However, as noted in *Ehmke*, "public revelation would dispel all secrecy." *Id.*; *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.") (citing *Harrington v. Nat'l Outdoor Advert. Co.*, 196 S.W.2d 786, 791 (1946), and 1 R. Milgrim, *Trade Secrets* § 1.01[2] (1983)). By mailing the marketing materials to over three thousand potential clients — persons with no obligation to maintain the "secret" or limit its use — without first obtaining a non-disclosure agreement, Smartcomm let the proverbial cat out of the bag and cannot now, through this litigation or otherwise, get it back in.

## B. Customer and Independent Marketing Representative (IMR) Lists

**¶27** "If the party with the burden of proof on the claim or defense cannot respond to the motion [for summary judgment] by showing that there is evidence creating a genuine issue of fact on the element in question, then the motion for summary judgment should be granted." *Orme Sch.*, 166 Ariz. at 310. "[A]n opposing party may not rely merely on allegations or denials of its own pleading." Ariz. R. Civ. P. 56(e).

**¶28** We need not decide whether the "list of customers" or IMR list are trade secrets because Smartcomm failed to sufficiently disclose the lists at summary judgment such that the trial court could even evaluate the issue. Smartcomm alleged within its complaint that Maerki and Palmieri misappropriated the customer and IMR lists and used them to contact Smartcomm's customers on behalf of Janus. When asked to clarify which list Smartcomm referred to, Smartcomm, in circular fashion, in essence replied, "the one you stole." The following exchange at an October 2015 oral argument highlights the deficiency of Smartcomm's evidence:

> THE COURT: . . . I understand the work, as you had described it, to compile this list. But where is that list? They don't seem to know where that list is. . . . So where is this list that you contend constitutes a trade secret?
>
> [SMARTCOMM]: Well, they have it, of course, through Mr. Maerki.
>
> THE COURT: I understand — no, that's not good enough. . . . You can't say, you got it from Maerki. They're entitled to know what this list is so they can challenge the compilation on this list of whether it's a trade secret.

**¶29** Smartcomm alleged the defendants stole its list of customers. It was not Appellees' burden to establish Smartcomm's claims at summary judgment. Smartcomm could not rest merely upon allegations, but instead was required to sufficiently disclose the subject matter of the alleged trade secrets so Appellees could challenge whether the lists constituted and remained trade secrets.

**¶30** When pressed for a more specific disclosure, Smartcomm advised the list was in the repository of documents that "everyone" had access to, which the trial court also found inadequate:

> THE COURT: You understand why that response is problematic, don't you? If you were faced with a response that says, among the documents I gave you is a list, I'm sure you'd be the first one to say, how am I supposed to figure it out? How about if I guess wrong? Their response is, if there's a list, give me the stinking list. And that's their argument. And they've been trying to get it. The fact that it might be within a number of documents somewhere, frankly I don't think is good enough.

Even on appeal, Smartcomm does not identify any client list or IMR list in the record. Instead, Smartcomm directs the Court to its seventh supplemental disclosure, which contains only the same basic descriptions — "Smartcomm's list of customers," and "Smartcomm's list of Independent Marketing Representatives."[8]

---

[8] Smartcomm's sixth supplemental disclosure contains a lengthy description of how Smartcomm developed its "proprietary leads database"

¶31        Smartcomm argues it was only required to describe the subject matter of the lists, not actually disclose them.  To support its argument, Smartcomm cites a federal case out of California, *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1214 (N.D. Cal. 2012), which is neither binding upon this Court, nor does it stand for the proposition that a party may effectively respond to a motion for summary judgment by providing a generic description of its evidence, as Smartcomm would have us believe:

> [A]lthough Brocade does not list individual customer names, Brocade has sufficiently "described the *subject matter* of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit defendant to ascertain at least the boundaries within which the secret lies."

*Id.* at 1215 (quoting *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1453 (2002)) (emphasis in original).  Unlike Smartcomm, the *Brocade* plaintiff described the subject matter of the trade secret with particularity, such that the defendant could easily identify the list at issue, and in a manner justifying its treatment as a trade secret.  Smartcomm refused to identify with sufficient particularity which documents, among the thousands in the repository, it considered trade secrets.

¶32        After years of discovery, and days before the scheduled trial, Smartcomm stood before the trial court with only bare assertions and inferences.  On this record, we can reach no other determination than that Smartcomm failed to respond to the motion for summary judgment with "evidence creating a genuine issue of fact."  *Orme Sch.*, 166 Ariz. at 310.  On appeal, Smartcomm likewise fails to reference any evidence in the record sufficient to permit its claim to be heard by a jury.  Accordingly, we affirm the trial court's partial summary judgment on the trade secret claim.

---

from FCC microfiche records.  However, Smartcomm does not contend this "leads database" is actually the customer list it claims was misappropriated.

### III. Partial Summary Judgment on Alcorn's Personal Liability

¶33 Because we affirm summary judgment in favor of the Alcorn Defendants on all claims, we need not consider the separate grant of partial summary judgment on Claims Three, Four, and Eleven.

### IV. Dismissal of Request for Order to Show Cause

¶34 Smartcomm also appeals the trial court's denial of its application for an order to show cause as "moot."[9] Smartcomm filed two applications for orders to show cause, one in 2013, the other in 2015, both alleging Palmieri and the Alcorn Defendants had violated a permanent injunction against contacting Smartcomm's clients. The 2013 application argued Palmieri and the Alcorn Defendants had sent two emails to people on the no-contact list, in violation of subsection (3) of the injunction. Then, before the 2013 matter was resolved, Smartcomm filed the 2015 application, which it argued was "independent" of the 2013 application. The 2015 application, however, argued that both the Palmieri and the Alcorn Defendants violated subsections (1), (3), and (5) of the injunction and admitted the two applications had "some obvious overlap" for subsection (3). The trial court denied the 2013 application as moot, and, after considering the 2015 application, found sanctions were not warranted.

¶35 Because the two applications overlapped on subsection (3), and the 2015 application added nothing new to the 2013 application's subsection (3) arguments, it was not an abuse of discretion to deny the 2013 application as moot. All the 2013 application arguments were subsumed within the 2015 application, which the trial court denied, finding sanctions were not warranted. Accordingly, we affirm the denial of the 2013 application.

---

[9] The Alcorn Defendants argue Smartcomm failed to provide any case authority or record citations to support this argument. *See* ARCAP 13(a) (specifying what information should be contained in appellate briefs). In its reply brief, Smartcomm likewise alleges similar deficiencies in the answering briefs. In our discretion, we deny the relief requested by the parties under ARCAP 13 and decide the issues on the merits. *See Clemens v. Clark*, 101 Ariz. 413, 414 (1966) ("[T]his Court is reluctant to perform the duties of counsel for either party to an appeal; however, . . . we remain inclined to decide cases on their merits.").

## V.    Motion to Take Judicial Notice

¶36    The night before this Court's scheduled oral argument, Smartcomm filed a motion requesting we take judicial notice of a recent order issued against Janus and the Alcorn Defendants in the United States District Court for the District of Arizona.   There, the Securities and Exchange Commission filed suit against Janus and the Alcorn Defendants for violating registration requirements of the Securities Act and participated in a fraudulent investment scheme.   Smartcomm asserts the District Court's approximation of Janus's ill-gotten gains at $6,172,260 is "virtually identical to the claims and damages disclosed by [Smartcomm] in this action."   In our discretion, we decline to take judicial notice of this order.[10]

### CONCLUSION

¶37    The trial court's orders are affirmed.

¶38    We award Appellees reasonable attorneys' fees and costs to be determined upon compliance with ARCAP 21(b), pursuant to A.R.S. § 12-341.01 and the contracts between the parties.

---

[10]    Were we to take notice of the District Court's findings on the ill-gotten gains, we would necessarily also take notice of its finding that the broadband frequency licenses "had little or no value."   Such a finding would altogether undermine Smartcomm's trade secret claims because for something to be a trade secret, it must "derive[] independent economic value."   A.R.S. § 44-401(4).